Selden v. Preston.

---

CASE 28—PETITION EQUITY—APRIL 21.

## Selden v. Preston.

APPEAL FROM LAWRENCE CIRCUIT COURT.

1. WHERE A CAUSE OF ACTION EXISTS IN BEHALF OF A RESIDENT OF THIS STATE AGAINST A NON-RESIDENT the mere fact of the debtor being a non-resident will not prevent the statute of limitations from running.

    *But where the debtor is a resident* of this state and absents himself from the state by removal or otherwise, the period of his absence will be omitted in the computation of the time.

2. PERIOD OF THE WAR NOT COMPUTED.—If a state of war exists between the governments of the creditor and debtor, as the creditor can not appear in the domicil of his debtor to collect his debt, the right to collect it is suspended during the war, and revives in full force on the restoration of peace, *and the time during the existence of the war is not computed in limitation of the action.*

3. None of the courts of the Union have gone so far as to deny the right of one living in the Confederacy during the late war, having debts due him in the adhering states created prior to the beginning of hostilities, to collect those debts by judicial process after its termination, and, where the statute of limitations has been pleaded, to · strike from the computation of the time the period that the war was carried on.

4. THE RIGHT TO PROCEED ON CONSTRUCTIVE SERVICE AGAINST ALIEN ENEMIES, or against debtors living in the seceded states during the late war by creditors in the adhering states, has been settled.   But such proceedings only affected the attached property of the debtor.

   No PERSONAL JUDGMENT could be rendered against such enemy in such proceedings.

   The creditor was not required to pursue this imperfect remedy in order to avail himself of the exceptions expressed in the statute · of limitations.

5. INTEREST IS NOT ALLOWED during the time the right of action is suspended by war.

STEVENSON & MYERS, ⎫
CONWAY ROBINSON,   . ⎪
JOHN SELDEN, . . . ⎬   . . . . . . . For Appellant,
W. C. IRELAND,   . . ⎭

CITED

Angell on Limitations, ed. 1854, p. 61.

Act of Maryland 1715, chap. 23, sec. 6, Thomp. Dig. 289, 290.

Revised Statutes, chap. 97, sec. 14.

Va. Stat., 3 Hen., chap. 35, sec. 6, pp. 383, 384; 1 R. C. 1819, p. 491.

Ky. Stat., Act 1838, 3 Stat. Law, 599; 2 Rev. St., p. 401.

Story's Eq. Jur., section 190.

Co. Litt. 75 *b*, 232 *b*; 10 Rep. 56 *a*; Cro. Car. 550.

Civil Code, section 132.

Story's Eq. Pl., section 849.

Cowp. 741, Knight v. Bate.

Act of 21, Jac. 1, c. 16.

Act of Congress June 11, 1874, 13 Stat. 123.

5 Barn. & Ald. 204, Murray v. East India Co.

4 Salk. 421, Cary and wife v. Stephenson.

2 Vern. 695, Jolliffe v. Pell.

1 Iredell, 74, McKendre v. Littlejohn.

4 Bingh. 704, Douglas v. Forrest.

Selden v. Preston.

1 You. and Col. C. C. 607.
2 U. S. Statutes, Act of April 10, 1806, pp. 372–74.
2 Martin (N. S.), 432, Hernandez v. Montgomery.
7 Martin (N. S.), 481, Agraud v. Baber's heirs.
3 Lou. A. R. 221, Landry v. L'Eglisse.
7 Lou. A. R. 580, Gilbert v. E.
1 Rob. Pract. 456, 458–61, 469, 605, 616, 222, 223.
2 Rob. Pract. 330.          2 Phil. Ev. 662, 663.
9 Wall. 483, The City v. Lawson.
4 Cranch. C. C. 619, Digges v. Eliason.
4 Bibb, 306, Montgomery v. Caldwell.
6 Wall. 532, Hanger v. Abbott.
9 Wall. 687, The Protector.
5 Ired. 590, Arrington v. Gee.
7 Ind. 424, Davis v. Coleman.
1 Cowen, 103, Sherrill v. Hopkins.
8 Mass. 99, Legg v. Legg.
5 Mon. 92, Hodge v. Owings.
6 J. J. M. 523, Clayton v. Walton.
5 B. Mon. 424, Wells v. Porter.
1 H. and M. 4, Brown v. Brunt.
4 J. J. M. 3, Castleman v. Holmes.
7 Leigh, 358, Laidley v. Merrifield.
9 Dana, 331, Talliaferro's ex'rs v. King's ex'r.
3 Dana, 497, Greenwade v. Greenwade.
1 Wall. 626, Spain v. Hamilton.
7 Wall. 505, Ewing v. Howard.
9 Cranch, 160, Clark's ex'rs v. Van Riemsdyke.
2 Wheat. 383, Leeds v. Marine Ins. Co.
1 How. 151, Bank U. S. v. Beverly.
6 Wall. 299, Clements v. Moore.
6 Grat. 246, Vaithir v. Zane.
9 B. Mon. 189, McCandless & Co. v. Hadden.
4 Mon. 531, Rudd v. Hanna.
5 Greenl. 204, Ross v. Gould.
2 Greenleaf's Ev., section 300.
1 Black. 91, Hagar v. Thompson.
2 N. and M. 428, Hare v. Norton.
3 Metc. 48, Fahnestock v. Bailey.
2 Metc. 288, Ashley v. Woolfolk.
4 Bush, 145, Moorman v. Beauchamp.
5 Bush, 558, Harris v. Moberly.
4 Excheq. 114, Johnson v. Osenton.
9 Leigh, 387, Yerby v. Grigsby.

9 Wall. 766, Butler v. Maples.

1 Q. B. 99, Edmunds v. Bushell.

1 C. 677, Totterdell v. Fareham Co.

3 Am. L. Reg. (N. S.) 403, Ins. Co. v. Brookes.

3 Pet. 428, Parsons v. Armor.

4 How. 416, Smyth v. Strader.

2 Black. 372, Calais S. B. Co. v. Van Pelt's adm'r.

1 Tex. 50, Kesler v. Zimmershitte.

1 Met. 58, Jones v. Shelbyville F. & M. Ins. Co.

2 Met. 608, Millett v. Parker.

1 Bush, 48, Garvin v. Mobley.

5 Bush, 624, Whitaker v. Crutcher.

1 Blackstone, 59, 60.

1 Story on Con., section 400.

1 Ld. Raym. 432, Kensey v. Hayward.

1 Lutw. 260; Fitzgib. 170 and 289.

2 Str. 907, Wilcox v. Higgins.

1 Wash. 302, Brown's ex'rs v. Putney.

3 Caine, 204, Jackson v. Horton.

8 Cranch, 93, Richards, &c. v. Maryland Ins. Co.

1 Bailey, 545, Hunter v. Glenn.

1 Spears, 84, Allen v. Roundtree.

5 Wend. 215, Schermerhorn v. Schermerhorn.

7 El. and Bl. 293, Curlewis v. Worthington.

7 Bush, 690, Hull v. Deatly's adm'r.

1 Leigh, 163, Rankin v. Bradford.

7 Leigh, 288, Wilkinson & Co. v. Holloway.

3 Bibb, 269, Ormsby v. Letcher.

5 Bush, 582, Walker and wife v. Sayres.

7 Bush, 233, Buffington v. Ulen.

7 Bush, 386, Reeves v. Trigg.

8 Bush, 590, Poston, &c. v. Smith's ex'r.

8 Bush, 667, Hobson, &c. v. Hobson's ex'r.

7 Phila. Rep. 159, Hill v. Biggariott *et al.*

1 Bush, 510, Hieronymous *et al.* v. Mayhall.

1 N. H. 15, Doe v. Layward.

7 Cal. 430, Nelson v. Nelson.

7 Blatch. 408, Kanawha Coal Co. v. K. & O. Coal Co.

1 Clarke, 503, Penley v. Waterhouse.

9 Cush. 531, Seymour v. Deming.

5 Strob. 33, Arnold v. Frazier.

8 Cranch, 107, Beatty's adm'rs v. Burnes.

1 Session Acts 1869, page 409.

7 How. 1, Luther v. Borden.

29 Beavan, 297, Flood v. Patterson.
22 Eng. C. L. R.
12 Martin (O. S.), 76, Morgan v. Robinson.
12 Wheaton, 134, Montgomery v. Hernandez.
16 Am. L. Reg. 616, Life Ins. Co. v. Hall.
10 Wallace, 172, Dean v. Nelson.
18 Wall. 197, University v. Finch.
36 Md. 501, Thurston v. Blackiston
13 B. Mon. 409, Baker's adm'r v. Baker's adm'r.
17 B. Mon. 359, Bennett v. Devlin.
16 Com. B. (7 Scott), 133, Towns v. Meade.
11 Wall. 244, Levy v. Stewart.
15 Wall. 177, Brown v. Hiatt *et al.*
11 Wall. 493, Stewart v. Kahn.
11 Wall. 508, U. S. v. Wiley.
23 How. 164, Benjamin v. Hillard.
12 Wall. 700, The Protector.
13 Pet. 77, Andrews v. Pond.
10 Wend. 75, Honus v. Broughton.
20 Grat. 397, Kraker v. Shields.
10 Pet. 211, Boone v. Chiles.
12 Pet. 190, Clarke v. White.
11 How. 140, McCoy v. Rhodes.
10 Wall. 304, Gunnell v. Bird.
13 N. Y. 236, Gales v. McKee.
15 Conn. 220, New Haven Bank v. Mitchell.
21 Vermont, 279, Anderson v. Coonly.
22 Pick. 92, Valentine v. Piper.
23 Wend. 260, Sandford v. Handy.
26 Maine, 84, Bryant v. Moore.
10 N. H. 538, Hatch v. Taylor.
19 Ala. 165, McClung v. Spotswood.
21 Grat. 740, Myers v. Zetelle.
24 Ind. 499, Deardoff *et al.* v. Foseman.
26 Ind. 204, Blackwell v. The State.
27 Ind. 368, Webb *et al.* v. Baird *et al.*
31 Ind. 76, State v. Pepper.
51 Maine, 506, York Co. F. & M. Ins. Co. v. Brookes.
53 Maine, 284, State v. Peck.
31 Vermont, 315, The Passumpsie Bank v. Goss *et al.*
31 Vermont, 450, Dixon v. Dixon.
10 Wall, 604, Merchants' Bank v. State Bank.
34 Cal. 48, Maynard v. F. F. Ins. Co.
10 Wall. 129, Wiggins *et al.* v. Burkham.

10 Wall. 141, Field v. Farrington.
14 B. Mon. 248, Keller v. Sinton's ex'rs.
10 Wend. 282, Huntington v. Brinkerhoff.
11 Excheq. (H. & G.) 166, Forbes, &c. v. Marshall.
10 B. Mon. 15, Prather v. Ross.
12 B. Mon. 565, Bohannon v. Combs.
16 B. Mon. 409, Ridgely v. Price.
17 B. Mon. 359, Bennett v. Devlin.
15 Vermont, 733, Hill v. Bellows.
16 Pick. 359, Little v. Blun.
26 Vermont, 113, Wheelen v. Brewer.
23 Maine (10 Shep.), 164, Crosby v. Wyatt.
24 Vermont, 625, Royce v. Hurd.
43 Miss. 212, Fisher v. Fisher.
32 N. H. 452, Ward v. Cole.
38 N. H. 40, Ward v. Howe.
12 Pet. 331, Toland v. Sprague.
14 Pet. 299, Irvin v. Lowry.
10 Wall. 318, Cooper v. Reynolds.
16 Wall. 1, Dair v. The United States.
24 Ind. 481, Deardorff *et al.* v. Forseman.

BRECKINRIDGE & BUCKNER, ⎫
K. F. PRICHARD, . . . . ⎭ . . . . For Appellee,

CITED

Angell on Limitations, section 205.
Bacon's Abridgment, Alien, D.
1 Bos. and Pul. 163, Sparenburg v. Baunatyne.
6 Wall. 539, Hanger v. Abbott.
2 Black, 685, Prize Cases.
8 Cranch, 155, The Rapid.
8 Cranch, 290, The Venus.
2 Wall. 404, Mrs. Alexander's Cotton.
14 B. Mon. 248, Kellar v. Sinton.
10 Wall. 222, Braun v. Sauerwein.
31 Ill. 276, Stiles v. Easley.
37 Md. 39, Dorsey v. Thompson.
30 Md. 518, Dorsey v. Kyle.
11 Wall. 259, McVeigh v. U. S.
30 Md. 532, Dorsey v. Dorsey.
53 Ill. 63, Mixer v. Sibley.
10 Wall. 158, Dean v. Nelson.
11 Wall. 581, Ludlow v. Ramsey.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

On the 1st of January, in the year 1854, Robert W. Latham and Thomas L. Preston executed an obligation to William Selden in substance as follows: "Know all men by these presents, that we, Robert W. Latham, of Washington City, and Thomas L. Preston, of Washington County, Virginia, are jointly held and bound unto William Selden, of the city of Washington, in the sum of forty-eight thousand dollars in good and lawful money of the United States, which money he promises to pay on or before the 1st day of January, 1859. Now if the above-bound Robert W. Latham shall well and truly pay to the said William Selden, or to his heirs, assigns, or legal representatives, *twenty-four thousand dollars* in good and lawful money of the United States, on or before the 1st of January, 1859, with interest thereon from the time the principal shall become due, then the above obligation to be void, otherwise to remain in full force and virtue. Signed by the parties and dated on the 1st of January, 1854."

In the month of March in the year 1869 Selden (the appellant) instituted this action in equity in the Lawrence Circuit Court against Thomas L. Preston and the Warfield Coal and Salt Company, alleging the non-payment of the twenty-four thousand dollars by either of the obligors, except certain credits indorsed, and seeking to attach certain interests owned by Preston in the Warfield Coal and Salt Company to its payment, upon the ground that Preston was a non-resident of the state. Before the rendition of the judgment below, Preston, who at the institution of the action was a resident of the state of Virginia, entered his appearance, resisting any recovery for various reasons set forth in his answer, the principal ground of defense being that he signed the obligation as the surety only of Latham, and that seven years had elapsed from its maturity to the institution of the action. By the statute of this state the failure to institute the action within the seven

years after the debt falls due releases the surety on the note or obligation from liability, unless facts exist bringing the case within some of the exceptions mentioned in the act, none of which are relied on in this case or have any existence in fact. The appellant (Selden), in order to avoid the defense relied on by Preston, filed an amended petition, in which it is alleged that from the inception of the war between the government and the Confederate States to its close Preston was a resident of the state of Virginia and in the service of the Confederate Government, while he (Selden) was a resident and citizen of the District of Columbia, within the loyal states; that the courts of the Confederacy were closed against him, and all commercial intercourse interdicted between the two powers, and therefore the statute of limitations was suspended as to all such contracts between the citizens of each government during the continuance of hostilities.

It is insisted by the appellee Preston that the existence of the war, admitting the facts alleged in the amended petition to be true, did not suspend appellant's remedy for the collection of his debt, and certainly not his right of action in the state of Kentucky or in any of the adhering states; and having instituted his action in this state, where the courts were open to all during the continuance of the war, the *lex fori* must govern.

It is a plain legal proposition, applicable to the statute of limitations of this state, that where a cause of action exists in behalf of a resident against a non-resident the mere fact of the debtor being a non-resident will not prevent the statute from running; and it is only in cases where the debtor is a resident, and absents himself from the state by removal or otherwise, that the period of his absence will be omitted in the computation of time. Such an exception or saving is by reason alone of the statute; and if there had been no war it must be conceded that the statute of limitations would have been an available defense to the action. It must also be con-

ceded that during the existence of the war Selden was deprived of all right to maintain an action in the courts of his debtor's state or country for the recovery of his claim.

"The character of alien enemy carries with it a disability to sue or to sustain a *persona standi in judicio,* and the total inability to sustain any contract by an appeal to the tribunals of the one country on the part of the subjects of the other." "The legality of commerce and the mutual use of courts of justice are inseparable." "The right of the original creditor to sue for the recovery of the debt is not extinguished, it is only suspended, during the war, and revives in full force on the restoration of peace." (Wheaton's International Law, secs. 307–10.)

In Norris v. Doniphan (4 Met. 385) the court said "that a plaintiff residing in the enemy's country has not the legal capacity to sue in our courts during the war." This is a well recognized principle of the law of nations, the subjects of each of the belligerent countries being regarded as not only hostile to each other, but from motives of public policy all commercial relations cease to exist, and the rights or remedies for enforcing contracts remain suspended until the restoration of peace.

None of the reasons upon which the statute of limitations is based can apply to creditor and debtor thus situated, as no laches can be imputed to either. The debtor may be willing to pay his creditor if he can reach him, or the creditor to enforce payment if allowed to maintain his action. In the absence of war the appellant's plea would be disregarded, as no obstruction would then have existed preventing him from instituting his action in the courts of Virginia.

It is admitted in argument by counsel for Preston that if Selden had instituted his action in Virginia the period of the war would have been excluded from the computation of time, as he was disabled from suing in that state; but, having selected a Kentucky court as the forum, the only ground for

defeating the plea of the statute of limitations is that Preston was a non-resident. The fallacy of this position consists in the failure to recognize the fact that the suspension of the rights of an alien enemy who is a creditor must operate as well against as for him; and if the home debtor is not allowed to plead the statute when sued in his own country after the war by such a creditor, the latter will not be permitted when he is the debtor to rely on the statute in order to defeat the claim of the home creditor.

Numerous authorities have been cited by counsel for the appellee in support of the proposition that Selden could, by a proceeding upon constructive service, have attached the property of Preston in order to collect his debt, and also to show that a personal judgment could have been obtained against Preston if found by the service of actual process upon him in any county in Kentucky where the action might have been instituted.

Vattel, in his Law of Nations, in treating of the effects of civil war, says: "When a nation becomes divided into two parties, absolutely independent, and no longer acknowledging a common superior, the war between the two stands on the same ground in every respect as a public war between two different nations. The obligation to observe the common laws of war toward each other is therefore absolutely   .   .   .   . and the same which the laws of nature imposes on all nations in transactions between state and state." (Page 427.)

Whether the decisions of the courts of this country rendered since the termination of the war have modified or disregarded this rule of international law is not necessary to be determined in this case. The Supreme Court, in the case of McVeigh v. The United States, held that "an alien enemy may be sued though he may not have a right to bring suit in our courts, and that when sued he has the right to appear and defend." The right to proceed against alien enemies or against debtors living in the seceded states during the war by

creditors in the adhering states upon constructive service has been recognized not only by the Supreme Court, but by the decisions of nearly all the appellate courts of the states where the question has arisen. This court sanctioned the doctrine in the cases of Thomas v. Mahone, Crutcher v. Hord, and Burnam v. The Commonwealth.

·In the case of Thomas v. Mahone this court said: "Even if a citizen of Kentucky who joined the Confederate army became thereby invested with the character of an alien enemy, as insisted by appellant, it is by no means clear that his property in Kentucky could not be lawfully seized by its courts and subjected to the payment of his debts." (9 Bush, 122.)

The majority of these decisions proceed upon the idea that it would be unjust to the citizen to deny him the remedies afforded by law for making his debts in the courts of his own country when the property of the debtor is within their jurisdiction, or in refusing to allow him a personal judgment upon actual service when the debtor, although an enemy, is dwelling within the creditor's country, and subject to its laws.

Admitting all that is claimed for appellee in argument on this branch of the case, that a citizen of the government or the adhering states during the war could have maintained an action and recovered a personal judgment against the enemy debtor if caught within the Federal lines and served with process, or could sell his property upon a constructive service, for the reason that the government would not close the doors of its courts against a citizen in order to prevent the property of the enemy from being sold under a judicial proceeding, and still it does not affect the question involved in this case. It is in fact an argument to show that the courts in thus protecting the rights of the citizen would hardly sanction a doctrine enabling a debtor adhering to the enemy to avoid the payment of a debt by reason of the lapse of time without any laches upon the part of the creditor, and the delay attributed

alone to the existence of hostilities between the two powers. It can not be seriously maintained that because Preston owned property in Kentucky or in the District of Columbia subject to an attachment, therefore the statute continued to run notwithstanding the existence of the war.

A judgment on constructive service for the sale of attached property only affects the property attached. The court in which such an action is brought has no power to render a personal judgment or to direct an execution to be levied on any other property. The remedy is or may be incomplete, and to require the creditor to pursue it in order to avail himself of any of the exceptions *expressed* in the statute can not be supported on principle or by authority. Such a remedy will not prevent the running of the statute, and it is only in cases where an action is instituted and the court has jurisdiction to render judgment by reason of actual service, or where the creditor asks for judgment against the debtor in the county of his residence or usual place of abode, that will avoid the operation of such a statute.

If Selden had instituted an action in every county in Kentucky against Preston, the latter being in fact a non-resident, as to him the statute would have continued to run in the absence of a personal service.

The case then presents this state of fact. The appellant could not enforce payment of his claim in the courts of Virginia, and had no right even to demand it of his debtor by reason of the war between the two powers. He could not have instituted his action so as to obtain a personal judgment against the appellee in Kentucky or the District of Columbia, as Preston was not only a non-resident, but forbidden from coming within the Federal lines, or from paying the debt; and yet it is insisted that the appellant must lose his debt because he might have sued if his debtor had been in Kentucky.

If there had been no war the argument would apply, and a

Kentucky court would say to the appellant, " As you made the contract with the appellee, who at the time was a non-resident, you should have gone to the courts of Virginia, where there was no obstruction to prevent or hinder you from collecting your debt."

None of the courts of the Union have gone so far as to deny the right of one living in the Confederacy during the war, having debts due him in the adhering states created prior to the beginning of hostilities, to collect those debts by judicial process, and where the statute of limitations has been pleaded to strike from the computation of time the period that the war was carried on.

In the case of Hanger v. Abbott (6 Wallace), Abbott, a citizen of New Hampshire, sued Hanger, of Arkansas, in assumpsit, to which the latter pleaded the statute of limitations. Abbott replied that he was a citizen of New Hampshire during the war and Hanger a resident of Arkansas, and that by reason of the rebellion he was prevented from instituting his action, etc. The Supreme Court, to which an appeal had been taken, said: "Ability to sue was the status of the creditor when the contract was made; but the effect of the war is to suspend the right, not only without any fault on his part, but under circumstances which make it his duty to abstain from any such attempt. His remedy is suspended by the acts of the two governments and by the law of nations not applicable at the date of the contract, but which comes into operation in consequence of an event over which he has no control. The right to sue was suspended by the acts of the government, for which all the citizens are responsible."

In the case of Brown v. Hiatts (15 Wallace)—Justice Field delivering the opinion—Brown, a resident of Virginia, loaned to Hiatt and wife, prior to the war, a considerable sum of money, and took a mortgage upon land in Kansas to secure its payment. It was held "that the statute of limitations of

the several states did not run against the right of action by parties during the continuance of the civil war. The law imposes the limitation and the law imposes the disability; it is nothing therefore but a necessary legal logic that the one period shall be taken from the other." It was further held in this case that as the debtor was prevented by law from paying the principal, that he ought not to be compelled to pay interest during the prohibition, and interest was deducted from the 27th of April, 1861, until the close of the war in April, 1866.

In the case of Levy v. Stewart (11 Wallace) it is said that creditors' debts due from belligerents are suspended during the war, but not annulled. It is further said with reference to exceptions contained in the statute of limitations that express exceptions of the kind are not to be found or do not exist; and if none can be implied, then all debts due from one belligerent to another are practically discharged if the war be of much duration.

In the case of Wall v. Robson (2 Nott & McCord, South Carolina, p. 498), Robson, a British subject and a resident of Great Britain, was the holder and payee of a bill of exchange accepted by Wall, payable on the 28th of May, 1812. In the month of June of that year war was declared by the United States against Great Britain, and the treaty of peace ratified between the two countries in the month of February, 1815. The bill having been protested for non-payment, Robson sued Wall after the war, in South Carolina, and the question was whether the period during which the war lasted should be excluded from the computation of time. It was held in that case that such a statute never was intended to prevent a man from recovering who had never been guilty of any intentional laches or delay, but who had been prevented from inevitable necessity from procuring his just rights. "War does not deprive the individual in an enemy's country of his right or

demand; it only suspends it until the courts of justice are open to enable him to recover it. The privilege of commerce has secured this right to the subjects of all nations, and the state which should refuse it at the present day would not deserve to be ranked among those of the civilized world."

It is contended, however, by counsel for the appellee that these cases only establish the doctrine that the statute will not run against the creditor who is an alien enemy, the disability applying to the person only, and that after the restoration of peace Selden could have gone to Virginia and there sued Preston, or if Preston had been a creditor of Selden he could have come to the courts of Kentucky and here sued Selden, and in neither case could the statute have been pleaded. In time of peace the home creditor has the right to proceed against the debtor in the domicil of the latter, and if he fails to do so he is guilty of such laches as deprives him of any remedy under the laws of this state, where no action has been instituted and personal service obtained before the running of the statute, in the event the debtor makes such a defense. In time of war no such proceeding can be had, as the home creditor, by the express interdiction of his government, can not appear in the domicil of his debtor; nor will the government of his debtor permit him to do so, if licensed by his own government to enter the enemy's country for the purpose of collecting his debt.

If the home creditor is required, as is maintained by counsel he should be, to go to the courts of the country where his debtor resided during the war, all his debtor has to do is to leave that country and remove to the creditor's country in order to exempt himself from all liability; or in the case of the British creditor suing his South Carolina debtor, or the Virginia creditor suing the Kansas debtor — cases already referred to — if these alien creditors had been also debtors to citizens of those states, and when instituting suits to recover their debts had

also been sued upon their own obligations, the courts of the home creditors would have dismissed *their actions* and rendered judgment in favor of the alien enemy creditor.

If this be regarded as the law, an enemy is in a better condition than he who retains his allegiance to his government. Such is not the law. The statute being suspended *pendente bello* in favor of a creditor who is an alien enemy, it must also operate in favor of the domestic creditor.

A contrary rule would demand that a nation at war with another should protect the rights and property of the *enemy*, and in so doing actually confiscate the property of its own citizens. There is no reason for adjudging that Selden should have instituted his action in Kentucky or in the District of Columbia against Preston when there was no possibility of personal service. Such a remedy afforded no relief, and both powers prohibited him from going where the relief could be obtained.

This remedy having been denied him by the acts of the two governments without any fault on his part, and for which he is not responsible, the law interposes for the relief of the creditor by suspending the statute of limitations so long as this remedy is suspended. *Contra non valentem agere, non currit prescriptio.*

The statute of limitations of this state provides that when the plaintiff is an alien and a subject or citizen of a country at war with the United States, the time of the war is not to be computed as a part of the period limited for the commencement of the action. (General Statutes, page 635.)

This is but a declaration of what the law was prior to the enactment of the statute, and the exception existed as well without as with it. It is admitted that if Selden had sued in Virginia Preston could not have relied on the statute. If this exception as to the alien *enemy* creditor exists regardless of the statute, there is no reason for refusing to apply the rule

to the home creditor; his rights should be protected at least to the same extent as those of the enemy. The courts of justice in both countries being closed as to either one or the other of the parties, and the creditor denied the remedy contemplated by the statute requiring him to be diligent, the statute is suspended until the remedy is restored, and a contrary doctrine is too unreasonable to be sanctioned by any legal tribunal.

The act of Congress approved June 11, 1864, entitled "An act in relation to limitation of actions in certain cases," has not been considered in disposing of this question. As to the remaining defense of the appellee, it is clear that the bond or obligation was delivered in the District of Columbia, and that the loan was for a sum of money that in five years, with interest, would amount to $24,000.

The record of the Virginia suit upon the same obligation that had been dismissed leaves some room to doubt whether all the money had been advanced to Latham by Selden; but this record being incomplete, and no judgment rendered, must be considered in connection with the other testimony in the case. When Selden sold out his interest in the Washington Bank to Whiting he was a man of fortune and in a condition to make the loan, and there is nothing in the record showing that he had sustained any losses up to January, 1854, when the money is said to have been loaned.

When the present petition was filed the appellee, with a full knowledge of the condition of the Virginia record, makes Selden a witness by annexing interrogations to his answer in regard to the loan of the money to Latham; he swears that he loaned him $18,461 under the contract, and that $7,000 of the money was gold placed at his disposal by his nephew. There is no reason for discrediting his statement. It is alleged in the Virginia suit by Preston that the knowledge of all these transactions was with Selden and Latham. Both of these parties, and particularly Selden, when called on

by the appellee to testify in the present action, swear that the money was actually advanced.

Latham was connected with a Virginia bank in which Preston was also interested, and was raising funds to aid that banker to pay his own stock, and this was the motive on the part of the appellee to aid Latham in raising the funds; but whether so or not, he made himself liable by his signature as security for Latham.

As the defense in the court below must have arisen mainly on the question of the statute of limitations, and this court not being altogether satisfied that the whole of the money was advanced by Selden upon the return of the cause, the parties may take additional proof on this branch of the case. If not, a personal judgment will be entered for the $24,000, less the credits, excluding any interest upon the principal from the inception of the war until its close.

The court, in its judgment, will also sustain the attachment, and subject the property upon which it had been levied to the payment of the debt.

The judgment is reversed and cause remanded for further proceedings consistent with this opinion—Judge Lindsay dissenting.