Re ese, J.
delivered the opinion of-the court.
In April 1837, James Kennedy and William S. Kennedy, for the consideration of twelve thousand dollars secured by the bonds of Oldham and Mosely to be thereafter paid to them, sold to Oldham and Mosely, ten acres of land • including the mill commonly called the upper mill on White’s creek near Knoxville, with the dam- and appurtenances; gave them a bond to convey to them a title, by deed of general warranty, with certain covenants therein referred to, on the payment to them, of the entire consideration secured as aforesaid; and they put the said O'ldham and Mosely forthwith into the possession and enjoyment of the premises. In February 1838, the complainants were presented by the grand jury of Knox county, for a public nuisance in keepihg up their dam and mill pond, to the *264 injury of the public health, and of this offence they were in June afterwards acquitted.- But in December following they were again indicted for the same offence, of which they were convicted by the verdict of a jury, and judgment of abatement of the said nuisance was thereon rendered., and the same was abated by opening the dam and by drawing off the water of the pond and the same has since remained in that condition. The bond first due for the consideration has been sued on at law, and this bill is filed to enjoin the collection oT the same, and to have the others surrendered and cancelled and for a re-cission of the contract. The relief prayed for in the bill is not predicated upon any allegation of frauds nor is there any proof of such in the case; nor is it insisted on in argument that the complainants are entitled to the relief on any principle of general equity, as arising out of the relation of vendor and vendee, under the circumstances which have occurred, for it is conceded that if property be deteriorated or destroyed in the hands of the vendee or equitable owner, the loss falls upon him; and this doctrine is now well settled. But it is contended that the parties in this contract stipulated against the removal of the mill pond by means such as actually took place, and the only question in this case is whether this is so or not. The title bond or contract stipulates that when the consideration shall be fully paid, the vendors will make to the complainants “an absolute deed of conveyance in fee and with general warranty,” for the premises in question “with all the rights, privileges, hereditaments and appurtenances, and with all the liabilities or incumbrances vested in or imposed” on the vendors set forth in the deed from Rufus Morgan to James Kennedy, and taking it for granted that this stipulation will embrace and incorporate in the contract between the complainants and defendants, all the covenants general or special contained in the deed from Rufus Morgan to the elder Kennedy, the question arises whether that deed does contain any covenant entitling the complainants to the relief sought. That deed was made in November 1820. After describing the boundaries of the ten acres by course, distance and other calls, it adds “so as to include Rufus Morgan’s new mill and dam, together with all and singular, the woods, *265 ways, waters, water courses, rights, privileges, profits, commodities, hereditaments and appurtenances to the said tract of land belonging or appertaining; “but especially it is understood as an appurtenance thereto, that the mill pond belonging to the said new mill hereby conveyed shall be and continue a mill pond appropriated to the use of said mill and the site whereon it stands as it now is forever, with the further privilege to the said Kennedy sr. of working and digging on the banks of the said pond to the distance of one rood from the water edge, for the purpose of repairing and preserving said pond from injury; it being at the same time understood that the dam of said pond is never to be raised above its present height.”
There are other covenants in said deed, and among others one to indemnify Kennedy against one Bell whose lands were overflowed by said pond. The question is in what is granted above, did Morgan intend to covenant against the vis major, the act of God or of the government? Does this arise expressly or by necessary implication? If a vendor of a mill ■ dam and pond intended to give, and the vendee to exact a covenant so extraordinary as that the dam and pond should never in all future time be abated as a nuisance, would it not be expected to be expressed in direct and unambiguous terms? The truth is that when the whole deed is inspected there is no difficulty in understanding this portion of the covenant.
The closing line of the deed calls to run across the pond: so it is obvious from the deed that the pond is not all, perhaps very little of it, included in the ten acres. Morgan continued riparian owner of both, sides of the creek including the pond, and of the land covered by both the creek and pond up to Bell’s line; a part of it overflowed Bell’s land; under such circumstances Morgan says to Kennedy, “although I have not sold you the shores adjacent to the pond, nor the lands covered by it, and am not myself owner of all the land covered by the pond, yet I covenant that said pond shall be and always continue appropriated to your dam and mill at its present height and you may take the soil within a rood of the shores for repairs, and I will indemnify you against Mr. Bell; but then as connected with these covenants, you must raise your dam no *266 higher than at present, for that would overflow more of my land and more of Mr. Bell’s.”
There was under the circumstances of the case nothing extraordinary in the covenant, it was very natural and very proper, and we think there is no difficulty whatever in understanding and satisfying its meaning without any the least reference to protection against the criminal laws for a nuisance. We must therefore reverse the decree of the chancellor, dissolve the injunction in this case and dismiss the bill, but at the mutual cost of the parties.