McKinney, J.,
delivered the opinion of the Court.
This was an action of covenant, brought in the Circuit Court of Montgomery, on the 22d of September, 1854. The action is founded upon the following instrument :
“I, E. Marian Barker, bind myself to pay C. H. Smith and Samuel B. Seat, the sum of fourteen thousand dollars. The condition of the above obligation is such, that whereas the said C. H. Smith and S. B. Seat, have this day purchased of me, for' the sum of seven thousand dollars, on the following payments, to wit: Fifteen hundred dollars to be paid on the 1st day of September, 1854; twenty-seven hundred and fifty dollars, to be paid on the 1st day of September, 1857, with interest from the first day of September, 1854, and twenty-seven hundred and fifty dollars, to be paid September the first, 1858, with interest from the first day of September, 1854; all my interest — being three-fourths of lots numbered fifteen, sixteen and eighteen, (“ 15, 16, 18,”) in the original plan of the town of Clarksville, Montgomery county, State of Tennessee, being the ground whereon the warehouse buildings now *291 occupied by Barker and Diffenderffer are situated, for the extent and boundaries of which, reference is here made to the deed of S. A. Sawyer, H. F. Beaumont and Robert Browder, to James A. Trice, and the said Trice to me, which are recorded in the office of the Register of Montgomery county aforesaid. Also, the improvements on the vacant lot, next the River, consisting of two new sheds, erected in the fall of 1853. Now if i should make, or cause to be made, to the said Sm ith and Seat, their heirs or assigns, a good and sufficient title in fee simple, to said three-fourths interest in said ground and warehouse, and sufficient conveyance of said sheds on said vacant lot, on the making of the last payment as aforesaid, then this obligation to be void. Possession of.said premises and improvements, is to be given ay me to said Smith and Seat, on the 1st day of September, 1854, and said property to be covered by fire insurance, for six thousand dollars, policy transferred and placed in possession of said E. M. Barker, and in event of loss by fire, the amount of insurance, so much as necessary, to pay said E. M Barker. ' Five thousand five hundred dollars to be paid or secured satisfactorily to her, with interest as above. This 18th day of May, 1854.”
“E. Marian Barker, [Seal.]”
The declaration avers performance of the covenant, on the part of the plaintiffs, and assigns as a breach thereof, on the part of the defendant, the failure of defendant to give possession to the plaintiffs, “ of said premises and improvements,” on the 1st day of September, 1854, or at any time afterwards
*292 The pleas are, first, covenant performed, and secondly, a special plea, alleging a breach, on the part of the plaintiffs, in failing to cause “ said property to be covered by fire insurance.” Verdict and judgment were rendered in favor of the plaintiffs for $5979.36 damages, A new trial was refused, and the defendant appealed in error.
The proof shows, that the warehouse buildings, on lots 15, 16, and 18, were totally destroyed by fire, on the 18th of June, 1854, as were also the two new sheds on the vacant lot next the river. It also appears from the proof, that at the time of the contract between the plaintiffs and defendant, the lots and warehouses described in the foregoing covenant for title were in the possession and occupation of Barker & Diffenderffer, under a lease to expire on the- 1st of September, 1854, as was known to the plaiiitiffs, and hence the stipulation, that possession was not to be given until that day. It further appears, that one James A. Trice, from whom the defendant, Mrs. Barker, had purchased said property, previously to the sale thereof, by her to the plaintiffs, had caused the same to be insured against fire, to the amount of $6000.00, the policy not to expire until the first of December, 1854. And after the sale by the defendant to the plaintiffs, said Trice procured the assent of the Insurance Company to the transfer of his interest in the policy to said Smith and Seat; and on the 8th of June, 1854, made a formal and valid assignment of the same to them, and delivered the policy into their hands, upon an agreement with them, that they would *293 assign and deliver said policy to the defendant, Mrs. Barker.
This they failed to do, and after the destruction of the warehouses by fire, they expressly and repeatedly refused to assign the policy to the defendant, or to take any steps themselves to prove the loss, or to secure the amount of the insurance money, which, it seems, might have been collected at any time prior to the early part of September, 1854, about which time the office failed, and the money was entirely lost.
It is shown in the proof, that the first instalment of $1500.00, due 1st of September, 1854, was paid by the plaintiffs to the defendant; but there is no proof that • any part of the remainder of the purchase money has been paid.
The Gourt instructed the Jury, in substance, that the destruction of the warehouses by fire, did not excuse the defendant from the obligation to perform her contract, and that her failure to put the plaintiffs in possession of said warehouses on the first of September, 1854, was a breach of the covenant, and entitled the plaintiffs to recover three-fourths of the value of said houses and improvements. The jury were also instructed, “ that the plaintiffs were not bound to insure the property prior to the time when they should take possession thereof.” And that the defendant had no right, in the present action, to recoupe the damages alleged to have been sustained by reason of the failure of the plaintiffs to transfer the policy of insurance assigned to them by Trice.
We think the instructions are erroneous, and that in either one of several aspects of this case, the plaintiffs *294 must fail in a recovery. 1st. In the first place, as respects the three lots, numbers fifteen, sixteen and eighteen, and the buildings -thereon, it is clear, that the equitable title to the property passed to, and was vested in, the plaintiffs from the time of the contract. And being the equitable owners of the property, the doctrine seems to be, that in case of loss by fire, or other accident by which the value of the estate is lessened, after the contract and before it is completed, and no fault on either side, the loss falls upon the purchaser, and on the other hand, he will be entitled to any benefit that may accrue to the estate in the interval. If by the accident of unforeseen events, after the equitable title has become vested in the purchaser, any advantage or benefit arise to the estate, by which its value is increased, the vendor, cannot, upon this ground, resist a specific execution of the contract. So, if under like circumstances, the estate has been lessened in value, by unforeseen accidents in the meantime, the purchaser cannot refuse to complete his contract. Lord Eldon expressed the opinion, that no valid objection could be founded on the mere effect of the accident, because as the purchaser, by the contract, became in equity the owner of the premises, they were his to all intents and purposes.—1 Sugden on Vend. (Perkins Ed.) 388, 391. 6 Ves. R. 349. 1 Madd. R. 538. Such is the principle in regard to the specific execution of the contract, and it seems to us, to be alike applicable where damages are sought to be recovered upon the idea of a breach or non-performance of the contract. This doctrine rests upon the principle, that the purchaser is in equity the owner *295 of tbe estate, and its application to the case under consideration cannot be effected by the stipulation, that the possession of the property was not to be delivered till a future day. The equitable title having passed, in the absence of any implication to the contrary, arising from the terms, or legal effect of the contract, the risk must likewise be understood to have passed to the purchaser.
The "two sheds” may, perhaps, stand upon a different principle. The lot upon which they had been erected, was not the property of the defendant; she had not pretended to sell it; nothing was contracted for but the naked sheds, and these being of the nature of personal property, may fall within a different principle. But in our view of the case, no decision is called for upon this question, because, in the second place, if the law were held to be otherwise in the first aspect of the case, upon our construction of the covenant, the plaintiffs’ right of recovery is defeated by failure of performance on their part. We hold that the contract imposed upon the plaintiffs a present and immediate obligation to furnish indemnity to the defendant against loss by fire, and that their wilful refusal to do so, destroyed all tight on their part to throw the loss upon the defendant, even if by law, or the terms of the contract, the risk would otherwise have been upon her.
And .again: If it were conceded that upon this contract, the parties had independent rights of action against each othér., growing out of their respective breaches, is it not a proper case for the application *296 of the principle of recoupment of damages? We think it is. In every view, therefore, the action must fail.
Judgment reversed.