Cecil KING, Plaintiff–Appellee,

v.

William G. DUNLAP, et al., Defendants–Appellants.

No. 03A01–9605–CH–00162.

Court of Appeals of Tennessee, Eastern Section.

Nov. 12, 1996.

Published Pursuant to Court of Appeals Rule 11.

John D. Schwalb, with Brewer, Krause, Brooks & Mills, Nashville, for Appellant Mid–Century Fire Insurance Company.

Charles E. Rader, Knoxville, for Appellee.

## OPINION

SANDERS, Special Judge.

Defendant Mid–Century Fire Insurance Company has appealed from a chancery decree awarding the Plaintiff, Cecil King, recovery of most of the proceeds of a fire insurance policy issued to William G. Dunlap and wife, Joyce A. Dunlap, the owners of a residence destroyed by fire which Dunlaps had contracted to deed to King upon King's paying the purchase price of the residence. We affirm.

In August, 1992, Plaintiff–Appellee and Defendants William G. Dunlap and wife, Joyce A. Dunlap (Dunlaps), entered into a contract in which the Dunlaps agreed to sell to King Lot 3 in the Cooley Addition in the City of Knoxville for $6,500. King was to pay the consideration in monthly installments of $103.87, including 11.5% interest, plus $28.13 per month into an escrow account for payment of insurance and taxes, for a total amount of $130 per month. Upon payment of the purchase price for the property, the Dunlaps were to execute a general warranty deed to King conveying the property free and clear of encumbrances.

It appears the residence located on the property was in a bad state of repair and had been condemned by the City of Knoxville at the time of the sale. The parties agreed King would make the necessary repairs required by the City. It also appears that at the time the Dunlaps conveyed the property to King it was encumbered, along with other property, by a deed of trust held by Defendant First Peoples Bank of Jefferson County in the amount of $26,200.

Subsequently, the Dunlaps purchased a fire insurance policy on the property for $30,-000 which was issued by the Defendant–Appellant, Mid–Century First Insurance Company. The first insurance policy was issued to Dunlaps as owners and the insured. The First Peoples Bank of Jefferson City was also an insured as mortgagee. King was not an insured under the policy.

King entered into possession, made mortgage payments with irregularity, but made the necessary repairs to the building which passed inspection by the city. In August, 1994, the building on the property was destroyed by fire and that is what really precipitated this litigation. The Plaintiff–Appellee, Cecil King, filed suit against the Dunlaps and by amendments against Defendant Mid–Century First Insurance Company (Mid–Century) and First Peoples Bank of Jefferson County.

As pertinent, the Plaintiff alleged in his complaint, as amended, he had entered into a contract with Dunlaps to purchase the property on the terms set forth above; he had made all payments under the contract until the residence was totally destroyed by fire

and Dunlaps had purchased a $30,000 fire insurance policy from Defendant Mid–Century out of the monthly escrow payments he had made. He said the contract between him and Dunlaps provided: "In the event any sum of money becomes payable under any insurance policies carried on subject property, sellers shall have the right to receive any said sum of money and apply it on account of the indebtedness secured hereby." He alleged there was less than $5,500 owed on the property and Dunlaps were entitled to collect only the balance owed on the property out of the insurance proceeds and he was entitled to collect the balance. Plaintiff alleged Dunlap told him he intended to collect the full amount of the insurance proceeds and not give King any part of it.

Plaintiff asked that Dunlaps be enjoined from collecting any of the insurance proceeds above the balance owed under the contract. He asked that Mid–Century be required to pay all the insurance proceeds into court and First Peoples Bank be required to marshall assets to collect from other properties securing its mortgage.

Answers to the complaint were filed by each of the Defendants. Also, various counterclaims and corresponding pleadings were filed. To enumerate them all would serve only to lengthen this opinion. Suffice it to say, it was the contention of the Dunlaps that Plaintiff, King, had defaulted in his installment payments under the contract and they had declared a forfeiture and terminated the purchase contract prior to the fire. They insisted King was not an insured under the policy of insurance; they owned the property and they were entitled to the total proceeds of the insurance, except for the rights of First Peoples Bank as mortgagee.

Mid–Century admitted it had issued a policy to Dunlaps for $30,000 on the property. It denied the Plaintiff, King, had an insurable interest in the property. It alleged Dunlaps' contract with King had increased its risk on the policy and the contract of insurance was void. It further averred, in any event, the extent of any recovery, if any, by Dunlaps was limited to the balance owed by King on his contract. It also contended First Peoples Bank had knowledge of Dunlaps' transfer of the property to King, which increased Mid–Century's risk, but First Peoples Bank failed to notify Mid–Century of the transfer to King and the policy of insurance was void as to First Peoples Bank.

By way of cross claim, Mid–Century asked the court to adjudicate and declare the rights of the parties to the contract of insurance. It asked the court to declare that King, Dunlaps and First Peoples Bank were entitled to no recovery whatsoever under the terms of the insurance policy.

It was later agreed by all the parties, prior to the trial of the case, that regardless of how the court might determine the rights of the other parties to the litigation, First Peoples Bank would be paid from the insurance proceeds the sum of $5,604, which was the amount still owed on First Peoples mortgage, and $1,900 attorneys' fees, for a total of $7,504.

Upon the trial of the case, the principal issues centered around the contentions of Dunlaps that King had defaulted in his payments under the contract of purchase and Dunlaps had declared a forfeiture of the contract, to which King had agreed, and King was a renter of the property at the time of the fire and was not entitled to any of the insurance proceeds. It was also Dunlaps' contention that the policy of insurance issued by Mid–Century was a valued policy, the residence had been totally destroyed by the fire, and they were entitled to $30,000, less the amount due First Peoples Bank as mortgagee.

It was the insistence of King that he had not defaulted in his payments under the contract with Dunlaps nor had he agreed with Dunlaps that the contract was forfeited or that he was renting the property from Dunlaps. He also insisted Dunlaps were entitled only to the balance due under his contract to purchase the house, that he, King, was entitled to all the remaining insurance proceeds after First Peoples Bank received its agreed amount of $7,504.

Mid–Century contended at trial it was not liable to Dunlaps or anyone else for the total face amount of the policy of insurance. It insisted the proof established the house or

structure of the building retained its identity as a residence after the fire and could not be considered to be totally destroyed by the fire and its liability could not exceed the total value of the structure after the fire, which would be limited to no more than $13,200. It also contended King could not recover any of the insurance proceeds as he was a stranger to the policy.

The chancellor, in his determination of the case, as pertinent to this appeal, held as follows: 1. First Peoples Bank should be paid the $7,504 from the insurance funds as agreed by the parties. 2. There had not been a forfeiture of the contract between King and Dunlaps. Dunlaps were entitled to be paid the balance owed under the contract with King and $5,604 of the balance owed by King was being paid to First Peoples Bank on Dunlaps' mortgage, leaving King owing a balance to Dunlap, including interest, of $745.13. Upon payment of this amount, the Dunlaps were ordered to execute a deed to King. 3. The insurance policy was a valued policy pursuant to TCA § 56–7–801, et seq. The court also held the residence had been totally destroyed by fire and Mid–Century was liable for the face amount of the policy of $30,000. 4. Dunlaps' interest in the insurance proceeds, as record title owners of the property, was limited to the balance owed by King on the property. King, as purchaser of the property, had an equitable ownership interest in it, together with the right to be subrogated to the rights of Dunlaps under the insurance policy. King was entitled to the balance of the policy proceeds after payment to Dunlaps and the Bank.

Mid–Century has appealed, presenting the following errors for review:

"Whether the trial court erred in declaring the structure a total loss when it still maintained its identity and character as a house.

"Whether the trial court erred in declaring a stranger to an insurance policy entitled to insurance proceeds from Mid–Century.

"What is the extent or amount of a vendor's insurable interest under an agreement for deed or land installment contract."

■ We find no error in the chancellor's determination of the case, and affirm for the reasons hereinafter stated. We first consider the Appellant's contention that the court was in error for finding there was a total loss when the residence "still maintained its identity and character as a house." Appellant fails to cite us to any authority holding that because a building, after a fire, can still be identified as to its type of structure, per se, cannot be considered a total loss. Appellant, in its brief, states: "Where the house has not lost its specific identity and characters of building as of here, then there is no basis to find that the house is a total loss...." The Appellant then cited *Third National Bank v. American Equitable Insurance Company*, 27 Tenn.App. 249, 178 S.W.2d 915 (1943); *Hollingsworth v. Safeco Insurance Companies*, 782 S.W.2d 477 (Tenn.App.1989) and *Laurenzi v. Atlas Insurance*, 131 Tenn. 644, 176 S.W. 1022 (1915) as supportive of its argument.

We fail to find that any of these cases support its argument. In the *Third National Bank* case, the insured made no claim of total destruction of the house. Both parties proceeded on the theory that the cost of repairs was the measure of damages and the trial court and this court held that to be the measure of damages.

In *Hollingsworth*, the parties stipulated the cost of repairs to the residence would be between $31,000 and $32,000, which was covered by a $45,000 policy. The trial court awarded a total loss and this court reversed.

The *Laurenzi* case, which is a landmark case in this area, as pertinent, stated:

Was there a total loss? The roof of the building, a wooden structure, was wholly destroyed; likewise all of the walls except on one side, and part of the front porch; but these were so badly burned in places that the lumber in them was not worth the labor of rescuing and removing. However, the walls standing were considered so dangerous by the city authorities that they were required to be taken down. The floor remained uninjured, except that a large hole was burned through it in one place. The brick foundation on which the structure stood was unimpaired. Since, under these facts, the identity and specific

character of the structure as a building were obliterated, we think the loss was total, although the parts last referred to remained unconsumed. (Citations omitted.)

131 Tenn. at 663, 176 S.W. 1022.

We find the facts in *Laurenzi* to be similar to the case at bar. The chancellor, in addressing the issue of liability after finding the policy of insurance was a valued policy pursuant to TCA § 56–7–801, et seq., said: "Thus the question is: was the house totally destroyed by the fire? While some of the house remained after the fire, the burned structure was practically worthless. Indeed the City required what remained of it be taken down, and what was left was bulldozed over by the City so that nothing any longer exists in any form whatsoever. It is concluded that there was a total loss, and the Insurance Company is liable for the face value of the policy, $30,000.00." *Laurenzi v. Atlas Insurance Company*, 131 Tenn. 644, 176 S.W. 1022 (1915).

The record also shows that after the fire had occurred, a representative of Mid–Century went out to look at the residence "and they made the statement that they would not attempt to remodel it." The insurance company also introduced into evidence a copy of a certified real estate appraisal. The appraisal contained no estimate of the cost of repairs to the building but it does contain an " 'as-is' value of site improvements $200.00"

We cannot say the evidence on the question of a total loss of the property caused by the fire preponderates against the findings of the chancellor, and affirm in accordance with Rule 13(d), TRAP.

There is also another compelling reason why we must affirm the chancellor. Mid–Century, in its answer to the Plaintiff's amended complaint, admitted the fire was a total loss. Plaintiff King, in the second grammatical sentence of paragraph four of the amended complaint, stated: "Thereafter on August 26, 1994, the residence located on said property at 2504 Glenwood Avenue caught fire and was damaged to such an extent as to become a total loss." Mid–Century, in the second grammatical sentence of its answer to the complaint, said: "The

allegations of the second grammatical sentence of paragraph four are admitted."

In the case of *Rast v. Terry*, 532 S.W.2d 552, 554 (Tenn.1976), in addressing the resulting effect of an admission in an answer of an allegation in a complaint, our supreme court, speaking through Justice Henry, said: "When the allegations of the complaint are admitted in the answer the subject matter thereof is removed as an issue, no proof is necessary and it becomes conclusive on the parties." *See also John P. Saad & Sons v. Nashville Thermal, etc.*, 642 S.W.2d 151, 152 (Tenn.App.1982).

■ We consider together Appellant's other two issues, of whether the court erred in declaring a stranger to an insurance policy entitled to insurance proceeds and what a vendor's interest is under a contractual agreement to deed land. We find no error in the holding of the chancellor on either of these issues and affirm for the reasons hereinafter stated.

■ In determining how the insurance proceeds should be disbursed, the chancellor, in his memorandum opinion, as pertinent, stated: "Payment of insurance proceeds to Defendant Bank to the extent of its mortgage interest is concurred in by all parties, and will be ordered. The named insured, Dunlap, is next entitled to payment of the balance due on King's purchase price. Dunlap is not entitled to more, because payment of the balance owed by King satisfies Dunlap's interest. Is Plaintiff King entitled to the remaining issuance proceeds? Dunlap, record title owner, was the named insured in the policy. Coverage was not expressly limited in the policy to Dunlap alone. Plaintiff King as purchaser of the property had an equitable ownership interest in it. In these circumstances King is subrogated to the rights of the legal owner, Dunlap, entitling him to stand in the shoes of Dunlap. This includes the right to be subrogated to rights of Dunlap under the insurance policy, and this is particularly equitable here, because King was paying the insurance premiums pursuant to the purchase agreement. It is concluded that King is entitled to the balance of the policy proceeds after payment of the

Bank and Dunlap. Were the result to be otherwise the insurance company would receive a windfall benefit, not having to pay the full amount of its policy obligation to pay for the total fire loss of the house. *Walker v. Walker,* 138 Tenn. 679, 200 S.W. 825 (1917); *Greer v. Shelby Mutual Insurance Company,* 659 S.W.2d 627 (Tenn.App.1983). Although subrogation alone establishes King's right to the balance of the insurance proceeds, it appears that King inquired of the Insurance Company's agent about insurance coverage on the premises and was told that he (the agent) would look into it. Nothing more was heard from the agent. Standing alone this might not justify King's entitlement to insurance proceeds, but it demonstrates that the insurance company was made aware of King's interest in the premises as a purchaser, an interest giving him an equitable ownership interest, and as such making him one who foreseeably might become entitled to assert an equitable claim to insurance proceeds."

Appellant strongly argues that Plaintiff King was not an insured under the policy; he was not named in the policy and could have no lawful claim to proceeds of the policy. It argues an insurance contract is a contract of indemnity and one who is not a party thereto can have no lawful claim to the proceeds. It cites a number of cases as supportive of its argument.

Appellant also argues the limit of Dunlaps' insurable interest is the amount of the outstanding debt due from King. It insists the extent of its obligation under the insurance policy is limited to the amount of King's remaining indebtedness to Dunlaps under the purchase agreement.

Neither of the parties has cited us to any cases, either in this jurisdiction or other jurisdictions, directly in point on the issues before us. We conclude, however, that the unreported case of *Erma C. Parker v. Tennessee Farmers Mutual Ins. Co.,* decided by this court in opinion filed in the office of the clerk in Knoxville on December 30, 1988, being 1988 WL 138923, 1988 Tenn.App., LEXIS 865, is controlling in the case at bar. There are many similarities in the *Parker* case and the case at bar. In *Parker,* Mrs.

Parker, by contract in December, 1978, sold a dwelling and one acre of land to a Mr. Goodman for $15,500. Mr. Goodman made a down payment and the balance of the purchase price was to be paid in monthly installments over a period of 18 years. It was agreed title to the property would be conveyed to Goodman when the purchase price was paid. After the sale, Mrs. Parker kept in force a fire insurance policy in the face amount of $18,000. In 1986, the dwelling was destroyed by fire and upon Mrs. Parker's filing proof of loss, the insurance company discovered for the first time the property was subject to a sale agreement between Parker and Goodman. The insurance company tendered Mrs. Parker an amount equal to the balance of Mr. Goodman's outstanding indebtedness to her. In so doing, the insurance company relied upon the following provision in the policy: "Insurable Interest—We will not pay more than the insurable interest an insured person has in the covered property at the time of loss." Mrs. Parker rejected the offer and filed suit. The trial court found that the Plaintiff, as holder of legal title to the property, was entitled to recover the face amount of the policy and entered a judgment in her favor for $18,000 plus interest from the date of the fire. Upon appeal, this court held: "In general ... where the insured vendor has sold the property and the vendee has gone into possession and paid a portion of the purchase price, but title is still held by the insured, as between the insured and the insurer the insured is the owner of both the legal and equitable titles to the property and entitled to recover the full amount of the policy. However, as between the vendor and the vendee, the insured takes the proceeds of insurance which exceed the amount owed to the vendor, as trustee for the vendee."

Since the *Parker* case was not published and since the scrivener was the same as in the case at bar, we quote at length from *Parker* as follows:

A landmark case on this issue is *State Mutual Fire Insurance Co. v. Updegraff,* 21 Pa. 513 (1853). In that case, the vendor of property subject to an executory contract for sale was found to be entitled to full recovery under a fire insurance policy.

The first insurance policy was issued to the vendor after the contract for sale of the property but before conveyance. The sale agreement provided for payments in yearly installments. The vendee took possession immediately. The premises insured were destroyed by fire before the contract price was completely paid. The vendor submitted a claim for the entire proceeds under the policy. The insurance company refused the claim, contending the vendor was entitled to no more than the value of his beneficial interest in the property which was the unpaid balance of the purchase price. Rejecting this position, the court held the insurer was liable to the vendor for the entire amount of the policy and the vendor would hold those proceeds in excess of his interest in trust for the vendee. The Supreme Court of Pennsylvania filed an exceptionally well-reasoned opinion from which we quote extensively as follows:

"By the contract of sale the purchaser of real estate becomes in equity the owner; but this rule applies only as between the parties to the contract, and cannot be extended so as to affect the interests of others. * * * * At law the vendor, before payment of the purchase money and delivery of the conveyance, is, to all intents and purposes, the owner of the estate. It is true that he is a trustee for the vendee, who, as between the parties to the contract, is bound to take the estate subject to every loss which may happen to it without the fault of the vendor, and is consequently entitled to every benefit accruing to it after the agreement. * * * * As the vendor is a trustee for the vendee, every act of his in relation to the estate will be presumed to be for the benefit of the vendee, subject of course to the prior claims of the vendor himself. * * * * Although the vendor is not bound to insure, or even to continue an insurance already made, he may, like any other trustee having the legal title, insure if he thinks proper to the full value of the property. * * * * An insurance upon a house, effected by the vendor is prima facie an insurance upon the whole legal and equitable estate, and not upon the balance of the

purchase money. Where the form of the policy shows it to be upon the house, and not upon the debt secured by it, the burden of showing that the insurance was upon the latter and not upon the former, rests upon the underwriters. There is no hardship in this. The premium paid, as compared with that usually charged where the insurance is upon houses and not upon debts secured by them, is generally decisive of the question, and the rates of insurance are peculiarly within the knowledge of the insurance company. If the insurance was upon the whole estate, the premium would be according to the usual rates for houses of that description and location; if it was only upon the debt due to the vendor, there would be a large reduction, on account of the responsibility of the vendee, and the value of the lot of ground included in the sale, because both of these would, in that case, stand as indemnities to the underwriters. They would be entitled to a cession of the vendor's claims, from which an ample indemnity might be recovered. If the lot was worth the balance of the purchase money, there would be no risk whatever and the premium would be quite insignificant. * * * * But there was no evidence tending to prove that the premium was less than the usual rates for houses of the description set forth in the policy, where the whole state is insured. Nor was there any offer to return any portion of the premium. * * * * The instrument before us is an open policy of limited extent. The underwriters agreed to make good to the insured, not all his loss, but all such loss or damage not exceeding the sum stated as shall happen by fire to the property,—the loss or damage to be estimated, not according to the balance of the purchase money which may remain unpaid at the time of the damage nor according to the probabilities of recovering such balance from the vendee, or from the lot, but 'according to the true and actual value of said property.' The policy is in the form of an insurance upon a house and not upon a debt; and no evidence whatever was given to change its character or to show that anything more or less was intended by the

parties. It follows that the plaintiff below was entitled to recover under a trust, as to surplus, for the benefit of the vendee. The underwriters have shown no equitable right to intermeddle between the vendor and the vendee. Under such circumstances they must be content to respond to the party with whom they made the contract of insurance." *See also, Dubin Paper Co. v. Insurance Company of North America,* 361 Pa. 68, 63 A.2d 85 (1949).

In *Dubin Paper Company, supra,* the plaintiff purchased property pursuant to a land sale contract. Approximately one month later the property was destroyed by fire. At the time of the loss the property was insured under a fire policy issued to the vendor prior to the sale agreement. The plaintiff sued the estate of the deceased vendor and his insurer to recover proceeds due under the policy. The insurer claimed only payment of the unpaid purchase price to the vendor was due. The court, following *Updegraff, supra,* reiterated the proposition that the insurable interest of an owner of property is not reduced to the unpaid balance of the purchase price where the owner has entered into a sale agreement but has not yet conveyed legal title to the purchaser. "The measure of the insured's recovery [is] the one created by the policy, that is 'the actual cash value of the property at the time of the loss or damage.'" What happens to the proceeds after the insurer has fulfilled its obligation to pay is "between the vendor and the vendee alone, or persons in privity with them." *Dubin,* [63 A.2d] p. 97.

Other jurisdictions have treated the issue in the same fashion. For instance, in *Wilson v. Fireman's Insurance Company of Newark, New Jersey,* 403 Mich. 339, 269 N.W.2d 170 (1978), property destroyed by fire had earlier been sold pursuant to a land sale contract. The Michigan Supreme Court held the purchasers under that contract were entitled to the proceeds of a fire insurance policy in effect on the property when it was destroyed, less the amount of the seller's interest. Citing *Dubin* and *Updegraff, supra,* the court said, despite the provision in the policy limiting the insurer's liability "to the extent of the actual cash value of the property at the time of the loss ... nor in any event for more than the interest of the insured," the insurer was obligated to pay the entire proceeds. Those proceeds in excess of the vendor's interest would be paid to the vendees. The purchasers had paid the insurance premiums and, "as in *Updegraff,* there [was] no evidence to indicate that the insurance premium was less than the usual rate for such a house...."

The same issue was decided in *National Security Fire & Casualty Co. v. Miller,* 394 So.2d 31 (Ala.Civ.App.1980). The plaintiff owned property upon which she was issued a fire insurance policy by the defendant insurer. Plaintiff later sold the property pursuant to a land sale contract. The agreement between the plaintiff and the purchasers was that legal title would not be conveyed until the purchase price was paid. Monthly installments were provided for. The premises burned before full payment was made and plaintiff filed a claim for the loss under her policy. The defendant refused to remit the full amount due under the policy, contending the insured was not entitled to a sum greater than the value of her interest which was equivalent to the unpaid purchase price due on the property. The court said the insurance company could not set up the equitable title of the purchasers as a defense to liability on its contract with the insured, though it was noted that proceeds recovered by the insured in excess of her interest would be held by her in trust for the purchasers.

At 5A Appleman, *Insurance Law and Practice,* 212–15 (1970), it is stated:

The equitable rule has obtained in many states that where the building which was the subject of conveyance is destroyed or damaged, the vendor must apply the proceeds upon the purchase price and account for the balance to the purchaser. Other jurisdictions have stated the vendor must either apply the proceeds to the purchase price or to repairs. Nor would carrying out the contract without abatement of the purchase price after

the building burned affect the purchaser's rights to the insurance money.

Also, with regard to the rights to insurance proceeds, it is stated at 92 C.J.S., *Vendor & Purchaser,* § 296:

[T]he insurance money in a case of loss is as between the parties and the insurance company, payable to, and collectable by the vendor ... as between the vendor and the purchaser, the better rule would seem to be that it should belong to whoever must bear the loss resulting from the injury to the property. Hence, if the loss falls on the purchaser ... he is entitled to the benefit of the insurance money, and if it is collected by the vendor, he will hold it for the benefit of the purchaser who will be entitled to credit therefor on the unpaid purchase price or on a mortgage indebtedness assumed by him as part of the purchase price.

It appears the policy issued by Mid–Century to Dunlaps was issued as coverage against fire damage or loss of the dwelling. There is no indication it was intended solely for the purpose of securing the unpaid portion of indebtedness on the property. Also, the contract of insurance was exclusively between Mid–Century and Dunlaps. Therefore, as held in the cases cited above, Mid–Century may not now use the equitable title of King as a defense to its liability on a contract with Dunlaps.

Also, as indicated by the foregoing authorities, King, upon entering into the sales agreement with Dunlaps and taking possession of the property, became the equitable owner of it. Consequently, via the doctrine of equitable conversion, the risk of loss had accrued to King at the time the fire occurred. *See Oldham v. Kennedy,* 22 Tenn. 260 (1842); *Barker v. Smith,* 35 Tenn. 289 (1855). Consequently, the proper result would be that Dunlaps, though entitled to full recovery from Mid–Century, must hold those proceeds in excess of their interest, i.e., the unpaid balance of the purchase price, in trust for King.

The chancellor, in the case at bar, accomplished this end result in his final decree by awarding a recovery of the face amount of the policy for $30,000, ordering Mid–Century to pay the proceeds of the policy into the registry of the court, and ordering the clerk to pay First Peoples Bank the sum of $7,504, which was the balance owed on its mortgage against the property, and $745.13 to Dunlaps for the balance owed by King to Dunlaps under contract of purchase. The court subrogated King to the rights of Dunlaps to the remainder of the insurance proceeds and ordered the proceeds be paid to King.

We affirm the decree of the chancellor and the cost of this appeal is taxed to the Appellant. The case is remanded to the trial court for any further necessary proceedings.

FRANKS and SUSANO, JJ., concur.