## Sword, Special Deputy Banking Com'r, v. Scott et al.

March 19, 1943.

V. R. Bentley for appellant.

A. F. Childers for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Prior to September 18, 1926, the Kanawha-Elkhorn Collieries Company, a foreign corporation, owned a 2,-000-acre tract of land in Pike county. It became largely indebted to various creditors by whom actions were filed in the Pike circuit court against it, resulting in the sale of its property for the payment of its debts. The tract of land referred to did not bring at its separate sale two-thirds of its appraised value, leaving the right of redemption in the debtor. On the date indicated it conveyed its right of redemption (which had not expired) to appellee (a defendant below) Rushia R. Scott, whose husband was Frank R. Scott. Following that deed—which was lodged for record with the Pike county clerk on September 29, 1926—the amount of the bid reported by the master commissioner on the sale of the 2,000-acre

tract was paid into the Pike circuit court, wherein the sale was ordered and was later distributed to the creditors of the corporation.

On December 6, 1926, Rushia R. Scott and her husband deeded to J. B. Ramey, the father of Rushia R. Scott, a one-half undivided interest in the tract of land—the other half having been conveyed on October 1, 1926, by the same parties to James M. Scott, the father of Frank R. Scott, in trust to secure the sum of $10,000 which it is claimed Frank R. Scott owed his father, and that deed was recorded on October 10, 1927. At the time of the purchase of the equity of redemption Frank R. Scott, the husband of appellee, was largely indebted and was insolvent, as all parties to this litigation concede. Among his creditors was the First State Bank of Elkhorn City, which held his various notes as maker and indorser. The bank later went into liquidation and the State Banking Commissioner took charge of its affairs for winding up purposes, with plaintiff and appellant, Rush Sword, as Special Deputy Commissioner. On October 27, 1938, he filed this action in the Pike circuit court against Frank R. Scott, Rushia R. Scott, James M. Scott, J. B. Ramey and wife, and the trustees of the Dickinson County Bank —the latter having acquired the half of the tract conveyed to James M. Scott. The petition, after setting out plaintiff's official position and the various conveyances referred to, alleged that the money forming the purchase price for the entire tract was furnished by Frank R. Scott, appellee's husband, and that the deed executed to her was a voluntary transfer of his property to his wife in fraud of his creditors, and the same is alleged with reference to the later conveyances to Ramey and the elder Scott.

Plaintiff then prayed that it be so adjudged and that the tract of land, or a sufficiency thereof, be sold to satisfy plaintiff's debt. None of the defendants were brought before the court by personal service, except Mr. and Mrs. Ramey, who were personally served, the others —being nonresidents—were before the court only by constructive service. However, appellee, on September 6, 1939, entered her appearance by filing an answer which denied the material averments of the petition, and in a separate paragraph pleaded the limitation of ten years prescribed in section 413.130 of KRS, and section 2519 in Baldwin's 1936 Revision of Carroll's Kentucky Stat-

utes, saying in part that "No such action shall be brought ten years after the time of making the contract or the perpetration of the fraud." Plaintiff invoked section 413.190 of the same edition of KRS and section 2531 of the same Kentucky Statutes in avoidance of the pleaded limitation, which section says: "If at the time any cause of action mentioned in the third article of this chapter accrues *against a resident* of this state he is absent therefrom, the period limited for the commencement of the action thereupon against him shall be computed from the time of his return to this state." (Our emphasis.) Plaintiff, therefore, alleged that at the time of the commission of the alleged fraud forming the basis of the action Frank R. Scott and wife were residents of Pike county, but which fact was put in issue by appellee's pleading.

The parties took voluminous evidence by depositions, after which the cause was submitted to the court and it dismissed the petition, to reverse which plaintiff prosecutes this appeal. We are convinced that the judgment was correct for two reasons: (1) that the evidence was sufficient to support the finding that the consideration for the purchase of the tract of land was not furnished by appellee's husband, Frank R. Scott, but by her father J. B. Ramey, and (2) that the plea of limitations should prevail, each of which will now be considered.

1. J. B. Ramey and his daughter, the appellee, each testified that the consideration for the acquirement of the title to the tract of land under the 1926 transactions referred to was furnished by appellee's father, who at that time was in a flourishing financial condition, and whose enterprises consisted largely in coal mining operations, but who became a bankrupt four years thereafter. Their testimony is fortified by the fact that it is conceded and reiterated in brief for appellant that the husband, Frank R. Scott, was hopelessly insolvent at the time. Plaintiff, however, proved some circumstances —most of which were contradicted by appellee's proof —tending to create suspicion that the husband may have furnished the consideration for the purchase of the tract. The court evidently found otherwise on that issue, and under the well settled rule of practice that a chancellor's finding of fact will not be disturbed by this court unless more than a mere doubt of the accuracy of

such finding is generated by the proof, the factual issues as found by the chancellor will be accepted on appeal, we do not feel authorized to disturb the court's finding on this crucial issue. Such conclusion necessarily results in an affirmance of the judgment; but inasmuch as we are also convinced that the pleaded limitation is likewise sufficient for that purpose we will briefly discuss it.

2. It will be observed that the fraud, if any, was committed when appellee acquired title to the land on September 18, 1926, or in any event not later than September 29th of the same month when her deed was lodged for record in the office of the Pike county clerk; which was twelve years—lacking two days—from the time the cause of action accrued and the fraud, if any, was committed. The section of the statutes supra—invoked by plaintiff in avoidance of the pleaded limitation—it will be observed, provides for a suspension of the running of the statute only when the debtor charged with committing the fraud was a resident of this state, and absent therefrom *at the time* the cause of action accrued. But the pleadings made an issue as to whether or not the appellee and her husband were residents of this state at that time. If they were not, but were nonresidents of the state at that time, the suspension prescribed by the statute would be unavailable by the very terms of the statute itself, since the suspension arises alone from the fact that the defendant was a resident of this state at the time the cause of action accrued, and by thereafter absenting himself from the state suspended the running of the statute. Cases sustaining that interpretation are Seldon v. Preston, 11 Bush 191, 198; O'Bannon v. O'Bannon, 13 Bush 583; Aultman & Taylor Company v. Meade, 121 Ky. 241, 89 S. W. 137, 123 Am. St. Rep. 193, and a number of others listed in Shepard's Citations on page 223, and Banco Kentucky Company's Receiver v. National Bank of Kentucky's Receiver et al., 281 Ky. 784, 137 S. W. (2d) 357, the discussion of the instant issue beginning on page 816 of the cited Kentucky Report. Many other intervening cases will be found in Shepard's Citations of the reported cases supra.

In the Banco Kentucky case the question arose under section 413.190 of KRS, and section 2532 of Baldwin's edition of the Statutes supra, but the language now being interpreted is the same in substance and effect as that contained in the preceding section (2531)

of the Baldwin edition of the statutes and corresponding sections of KRS. So that, the principle determined in the Banco Kentucky case—and some of the preceding ones referred to—although made in the interpretation of the last cited section of the statutes (2532) is equally applicable to the first cited one (2531 of the Baldwin edition and its corresponding section in KRS). So that, the avoiding section invoked by plaintiff and appellant is not applicable to the facts of this case as creating a suspension of the running of the statute if when the fraud alleged to have been committed by the debtor, Frank R. Scott, he and his wife were then nonresidents of this state. In the absence of the court's specifying the ground or grounds for his dismissal of the petition, it will be assumed that it was upon any or all of the grounds which the proof sufficiently established. We will, therefore, assume that the court found as a fact that when the cause of action accrued in this case Frank R. Scott and his wife had theretofore permanently removed from the state of Kentucky to the state of West Virginia, where his father resided, and thereby became citizens of that state and, of course, nonresidents of this one. It is our conclusion that the proof is sufficient to sustain such a finding, and which, under the principles referred to above, the suspension of the running of the statute relied on by appellant is unavailable.

Moreover, in the case of Mullins v. Jennings' Guardian, 273 Ky. 68, 115 S. W. (2d) 340, which was an action entirely similar to the instant one, we held that the two sections of our statute—413.120 and 413.130 of KRS and sections 2515 and 2519 of Baldwin's Statutes—imposed conditions precedent to maintain the actions therein referred to, and that the conditions therein imposed, as to the time within which such actions might be brought, constituted a part of the right to maintain such an action, and were not merely limitations in the ordinary sense, which might be availed of by the defendant at his option, similar in effect to that contained in the Federal statute, known as the Employers' Liability Act, chapter 149, 45 U. S. C. A. Section 51, which both state and federal courts have interpreted as fixing the outside limit for the maintenance of the action prescribed therein. The Mullins case supra, adopted that principle as applicable to the two sections of the statute under consideration, and the authorities cited therein by necessary implication arrived at the same conclusion. That

interpretation is rested upon the language of section 2519 of Baldwin's edition and corresponding section of KRS, saying: "but no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud." The application of that interpretation does not rob an injured plaintiff against whom fraud was committed of remedy, since he could still proceed to subject the property by bringing the defendants before the court through constructive service, although that procedure would impose more burdens on plaintiff than when personal service is obtained. We, therefore, conclude that for this additional reason plaintiff's delay in bringing the action defeats its right to do so.

Complaint is made because the court allowed an amended answer to be filed to correspond with the testimony after proof had been taken and the cause submitted, but before the court considered the case and rendered judgment. No motion was made to continue the trial on that account, and the amendment was—in any event—unnecessary, since it only alleged that appellee's father furnished the proceeds with which she purchased the land in controversy.· The issue in the case was whether her husband furnished such proceeds, and if he did not do so, the source from which the wife obtained the consideration is immaterial so far as the rights of appellant are concerned. In addition thereto section 134 of our Civil Code of Practice permits amendments to be made throughout the trial of the case, but under imposed conditions by the court if requested by the opposing litigant. No such conditions were requested in this case, and for the reasons stated, we do not regard this objection as material.

We have not attempted to rehearse in detail all of the testimony in the case as each witness gave it, since its recitation would but unduly lengthen the opinion to no purpose. Therefore, we have contented ourselves with stating the probative tendency of the proof heard, which we conclude is sufficient.

Lastly, it is argued by appellant's counsel that since the right to maintain an action on the *notes* sued on was not barred (the statute of fifteen years being applicable, as he alleges) the procedure herein was likewise unaffected by any limitation statute, and continued to be open until the limitation on the indebtedness ripened. But

little need be said with reference to that contention. The right of action to collect the debt is quite distinct from one to reach and appropriate fraudulently conveyed property in satisfaction of the debt, and our legislature has so treated it by enacting separate limitations for each of such rights.

Wherefore, for the reasons stated, the judgment is affirmed.