William ESTES and his Wife
Gayle Estes, Appellants,

v.

Virgie THURMAN, Appellee.

No. 2004–CA–001525–MR.

Court of Appeals of Kentucky.

Aug. 26, 2005.

Discretionary Review Denied by
Supreme Court June 7, 2006.

Kenneth V. Anderson, Jr., Paducah, KY, for Appellants.

Michael B. Stacy, Wickliffe, KY, for Appellee.

Before BUCKINGHAM, JOHNSON, and MINTON, Judges.

*OPINION*

BUCKINGHAM, Judge.

William and Gayle Estes appeal from a judgment and order of the Ballard Circuit Court denying their claim for a portion of insurance proceeds paid to Virgie Thurman following a fire that destroyed a residence that was subject to a Land Sale Contract between the parties. We conclude that the court erred in determining that the Esteses were not entitled to any portion of the insurance proceeds since they did not contribute to the payment of the premiums on the insurance policy. Thus, we reverse and remand.

Virgie Thurman was the owner of a tract of land in Ballard County, Kentucky, upon which a house was situated. On January 1, 1999, Thurman and the Esteses entered into a Land Sale Contract for the transfer of the property. The contract provided that the Esteses would pay Thurman $17,000 for the property, payable in 84 monthly installments of $288 each. Under the terms of the contract, the first monthly installment was due and payable on January 1, 1999, and the last installment was due and payable on January 1, 2007.[1] The contract further provided that Thurman would deliver a deed to the property to the Esteses upon their payment of the full purchase price. In addition, the contract contained the following provision concerning insurance:

Vendee agrees to carry insurance on the dwelling house located on the land which is being conveyed for at least the equivalent of the remaining principal to be paid, with the Vendor named beneficiary of said policy to the extent of the outstanding principal and shall furnish the Vendor proof of said insurance. Vendee further agrees that said insurance shall contain premises liability for the benefit and protection of the parties.

On June 28, 1999, the residence was destroyed by fire, through no fault of either party. The Esteses had paid their monthly payments through July 1999. Although the contract provided that the Esteses procure insurance, Thurman provided the insurance on the property. We could find no affidavit, testimony, or other evidence that would indicate why Thurman procured the insurance rather than the Esteses.[2]

At the time of the fire, the Esteses owed Thurman approximately $16,000 on the purchase price. The insurance company paid Thurman $34,074.45 as proceeds to cover the loss. On December 21, 1999, Thurman filed a civil complaint in the Ballard Circuit Court against the Esteses, claiming that they had defaulted under the contract by failing to secure insurance as required by the contract. Thurman sought to have the court order that the Esteses had forfeited all rights in the property and enter a judgment terminating those rights. The Esteses filed an answer and a counterclaim for the portion of the insurance proceeds in excess of the amount Thurman was owed under the contract. They also sought to have the court order Thurman to execute a deed to the property to them.

The Esteses later moved the court to award them summary judgment in an amount equal to all insurance proceeds in excess of the balance owed on the purchase price and for the delivery of a deed transferring title to the property from Thurman to them. On June 27, 2001, the court entered Findings of Fact and Conclusions of Law denying the Esteses' summary judgment motion on the ground that "disputed facts remain to be determined by the Court at a hearing." The court further stated that Thurman should be entitled to all insurance proceeds so long as she did not prohibit the Esteses from obtaining insurance and that the Esteses should be entitled to a deed to the property if the proceeds were sufficient to pay the balance of the purchase price owed to Thurman.

The Esteses later moved the court for a trial date and for an order directing Thur-

---

1. It is unclear why the last installment would be due and payable on January 1, 2007, rather than on December 1, 2005.

2. The Esteses assert at one point in the record that they were unable to procure insurance because Thurman would not cancel her insurance.

man to issue them a deed, but the motion was denied. Thereafter, the Esteses moved the court to enter a final and appealable order. On July 2, 2004, the court entered a Judgment and Order that was apparently tendered by Thurman and a Judgment and Order that was apparently tendered by the Esteses. The court signed both orders.

The orders are inconsistent in that the order tendered by Thurman states that she may petition the master commissioner of the court to issue a deed for the property to her, and the order tendered by the Esteses states that they are entitled to a deed to the property and directs the master commissioner to execute a deed to them. The order tendered by the Esteses and signed by the court also dismisses Thurman's complaint for the return of the property to her. In addition, both orders dismiss the Esteses' counterclaim. This appeal by the Esteses followed.

Despite the inconsistencies in the orders, it is apparent that the circuit court intended to direct the master commissioner to issue a deed for the property to the Esteses.[3] Because Thurman had been paid the full purchase price for the property, the Esteses were entitled to a deed pursuant to the terms of the contract. Thurman did not appeal from this determination.

■ The Esteses argue in their appeal that the court erred in failing to award them the portion of the insurance proceeds in excess of the amount needed to cover the balance of the purchase price owed to Thurman. In support of their argument, the Esteses cite *A.H. Thompson Co. v. Security Ins. Co.*, 252 Ky. 427, 67 S.W.2d 493 (1934). Therein, the court stated:

It is a settled rule that, where a mortgagor or lienor is charged with the duty of taking out insurance for the benefit of the lienholder, the latter is entitled to an equitable lien on the proceeds of the insurance policy, although it, in terms, is payable to the mortgagor or lienor.

67 S.W.2d at 496.

Thurman does not respond to the *Thompson* case in her brief. Rather, she focuses on the Esteses' reliance on *Sebastian v. Floyd*, 585 S.W.2d 381 (Ky.1979), as support for their argument. The court in that case held that in a typical installment land contract situation, the equitable title passes to the buyer and the seller holds only bare legal title. *Id.* at 382. Thurman argues that the facts in this case are distinguishable from those in the *Sebastian* case because the buyer in that case made a down-payment on the purchase price, paid the insurance, and paid the real estate taxes on the property. Thurman argues that the Esteses "desire to be unjustly enriched by claiming the benefits" even though they breached the terms of the contract by not obtaining insurance on the property.

First, we agree with the Esteses that the real estate transaction herein was a typical installment land contract subject to the principles in the *Sebastian* case. The parties agreed in the Land Sale Contract that Thurman would not deed the property to the Esteses until they paid her $17,000, plus interest, to be paid in 84 monthly installments of $288 each. As in the *Sebastian* case, Thurman retained the bare legal title to the property, but its equitable title passed to the Esteses.[4] The fact that the Esteses did not make a down payment on the purchase price and did not procure insurance in accordance with the contract's

---

**3.** Apparently, Thurman refused to execute a deed herself.

**4.** *See Sebastian,* 585 S.W.2d at 382.

terms has no bearing on the legal or equitable title to the property.

We could neither find any Kentucky case directly on point addressing the issue before us nor did the parties direct us to any. We are not persuaded by the *Thompson* case cited by the Esteses.[5] Nevertheless, we are persuaded by their argument that Thurman held the insurance proceeds over and above that necessary to satisfy the remainder of the purchase price owed to her as trustee for them.

■ First, we note that "[a] fire insurance policy insures an 'interest in,' not the property itself." *Twin City Fire Ins. Co. v. Hannah, Inc.*, 444 S.W.2d 131, 133 (Ky. 1969). "Insurable interest" as used in the Insurance Code in KRS[6] Chapter 304 is defined as "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." KRS 304.14–060(2). Thurman had an insurable interest in the property in connection with the debt owed to her by the Esteses under the contract. *See Castle Ins. Co. v. Vanover*, 993 S.W.2d 509, 510 (Ky.App.1999). The question, then, is whether the Esteses had an insurable interest and whether they are entitled to a portion of the insurance proceeds even though they were not named as an insured on the policy and, apparently, did not pay any of the policy premiums.

As we have noted previously, the Esteses are considered to be the equitable owners of the property pursuant to the principles of the *Sebastian* case. Therefore, the risk of loss of destruction of the property pending completion of the sale was on them. *See* 27A Am.Jur.2d *Equitable Conversion* § 13 (1996); *Hillard v. Franklin*, 41 S.W.3d 106, 115 (Tenn.Ct.App.2000). This, of course, was an insurable interest.

Under the Land Sale Contract, the Esteses had agreed "to carry insurance on the dwelling house." Thurman was to be named as the beneficiary of the policy "to the extent of the outstanding principal." However, for whatever reason, Thurman, not the Esteses, carried the insurance.[7]

After the fire, the insurance company paid Thurman $34,074.45. This more than covered her insurable interest in the unpaid purchase price of approximately $16,000. We agree with the Esteses that Thurman is holding the remainder of the proceeds as trustee for them.

■ First, it is not necessary that one be named as an insured in an insurance policy in order to be entitled to policy proceeds. *See, i.e., Aetna Ins. Co. v. Solomon*, 511 S.W.2d 205, 208 (Ky.1974); *Thompson*, 67 S.W.2d at 496; and *Castle*, 993 S.W.2d at 510. Second, a named insured under a policy is not entitled to recover more than the value of his or her insurable interest. *See* KRS 304.14–060(3) and *Castle*, 993 S.W.2d at 510.

---

**5.** The facts in *Thompson* are distinguishable from those herein. In that case, the party required by the contract to purchase the insurance did so. Here, the insurance was not purchased by the party required by the contract to do so, but it was purchased by the other party to the contract. Further, the equitable lien in the insurance proceeds in *Thompson* was in favor of the seller; whereas, the purchaser is the party claiming the lien in this case. Finally, *Thompson* involved the sale of personal property, while this case involves the sale of real property.

**6.** Kentucky Revised Statutes.

**7.** The parties disagree as to why Thurman, not the Esteses, carried the insurance. Further, there was no discovery prior to the entry of the judgment in favor of Thurman by the court.

A recent Tennessee case, *King v. Dunlap*, 945 S.W.2d 736 (Tenn.Ct.App.1996), is factually similar to this case. In that case the Dunlaps entered into a land sale contract with King, whereby the Dunlaps agreed to sell property to King with the purchase price to be paid in monthly installments. Upon full payment of the purchase price, the Dunlaps were to execute a deed to the property to King. The Dunlaps purchased fire insurance on the property for $30,000, and King was not named as an insured under the policy. Thereafter, the building on the property was destroyed by fire.

The court therein held that the proceeds were first payable to the lending institution that held a mortgage on the property and then to Dunlap for the balance due on the purchase price. Thereafter, King, as equitable owner of the property who had the risk of loss at the time of the fire, was entitled to the remainder of the proceeds. *King*, 945 S.W.2d at 744. The court reasoned that "the proper result would be that Dunlaps, though entitled to full recovery from Mid–Century, must hold those proceeds in excess of their interest, i.e., the unpaid balance of the purchase price, in trust for King." *Id.*

We find the reasoning of the Tennessee court in the *King* case to be persuasive. As in that case, the buyer of the property under a land contract was the equitable owner of the property and had the risk of loss in the event of a fire. *See also* 77 Am.Jur.2d *Vendor and Purchaser* § 371 (1997). Thus, Thurman holds the portion of insurance proceeds in excess of the amount owed to her in trust for the Esteses. *See King, supra; Nat. Sec. Fire and Cas. Co. v. Miller*, 394 So.2d 31, 32–33

(Ala.Civ.App.1980); 44 Am.Jur.2d *Insurance* § 1508 (2003). The fact that Thurman paid the premiums for insurance and that the Esteses did not is of no consequence to our determination herein.[8]

Therefore, the judgment and order of the Ballard Circuit Court dismissing the Esteses' counterclaim for a portion of the insurance proceeds is reversed, and this case is remanded to the circuit court for the entry of a judgment in the Esteses' favor on their counterclaim.

ALL CONCUR.

---

8. Thurman argues that the Esteses should not be entitled to an equitable lien because they have unclean hands. We conclude that to apply the unclean hands doctrine would be inconsistent with the Court's holding in *Sebastian*, since a party with an equitable interest who defaults on a payment would always have unclean hands.