**Nicole R. SPARKS, Appellant**

v.

**TRUSTGUARD INSURANCE COMPANY, Appellee.**

No. 2011–CA–001119–MR.

Court of Appeals of Kentucky.

Dec. 14, 2012.

Dan E. Siebert, Louisville, KY, for appellant.

Sandra Spurgeon, William W. Tinker, III, Lexington, KY, for appellee.

Before ACREE, Chief Judge; MOORE and THOMPSON, Judges.

## OPINION

MOORE, Judge:

Nicole Sparks appeals an order of summary judgment dismissing her contract claim against Trustguard Insurance Company. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On May 16, 2007, Shawn King applied for a policy of automobile insurance with Trustguard through Trustguard's agent, Patton Chesnut Binder Insurance, Inc. (PCB). In his application, King listed himself as the sole, registered owner and driver of a 2002 Chevrolet Camaro, and as the sole applicant for the insurance; he also listed the Camaro's vehicle identification number (VIN) on his application. That same day, Trustguard issued King a policy of insurance covering the Camaro, and the policy also included underinsured motorist (UIM) coverage. As it relates to UIM, the relevant terms of King's policy provided:

**Insuring Agreement**

A. **We** will pay damages which an **insured** is legally entitled to recover from an **uninsured motorist** because of bodily injury:

1. Sustained by an **insured**; and

2. Caused by a motor vehicle accident.

. . .

B. **"Insured"** as used in this endorsement means **you** or any **family member.**

Furthermore, the terms, "you," and "your," were defined in the general definitions section of King's policy to "refer to the named insured, which includes the individual named on the Declarations page"—King—"or that person's spouse if a resident of the same household." "Family member" was defined as "a person related to you by blood, marriage or adoption and whose principal residence is at the location shown in the Declarations."

On November 13, 2009, Nicole Sparks, who characterizes herself as King's "longtime companion," was injured in a motor vehicle accident while driving the Camaro described in King's policy with Trustguard. Under the terms of King's policy, Sparks was not a named insured, nor did she meet the definition of a "family member." Nevertheless, Sparks sought UIM coverage from King's policy owing largely to the uncontested fact that she, and not King, had always been the owner of the Camaro. Trustguard rejected her claim, and Sparks subsequently filed suit in Laurel Circuit Court to enforce King's policy.

Aside from making a passing reference to "reformation" in her response to Trustguard's motion for summary judgment, Sparks never sought to invoke the circuit court's equitable power to reform the insurance policy; contract reformation "requires proof of (1) mutual mistake or (2) mistake on the part of one party and fraud on the part of the other," *Grisby v. Mountain Valley Ins. Agency, Inc.,* 795 S.W.2d 372, 374 (Ky.1990), and Sparks did not allege fraud, mistake, or unfair dealing, or assert that evidence of those things existed. Instead, Sparks urged that public policy and various rules of contract interpretation operated to imply her into King's insurance policy and its UIM coverage. Stated differently, Sparks simply sought to

enforce King's policy of insurance against Trustguard as it was written.

The circuit court summarily dismissed Sparks' action and, in doing so, declined to impute Sparks into the coverage of King's policy on any of the bases she presented. This appeal followed.

## STANDARD OF REVIEW

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure (CR) 56.03. It is well established that a party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings. *Continental Casualty Co. v. Belknap Hardware & Manufacturing Co.*, 281 S.W.2d 914 (Ky. 1955). "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and ... the question should be taken from the jury when the evidence is so unsatisfactory as to resort to surmise and speculation." *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky.2006) (citing *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky.1951)). " 'Belief' is not evidence and does not create an issue of material fact." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky.1990); *see also Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky.App.2007) ("A party's subjective beliefs about the nature of the evidence is not the sort of affirmative proof required to avoid summary judgment.") Furthermore, the party opposing summary judgment "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 481 (Ky.1991) (internal citations and quotations omitted).

On appeal, we must consider the evidence of record in the light most favorable to the non-movant and must further consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779 (Ky.App.1996). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001) (footnote omitted).

## ANALYSIS

At the onset, Sparks takes umbrage with the fact that the circuit court's order fails to state why summary judgment was granted in this matter. In the absence of any specificity we will presume that the circuit court's order is based upon each of the grounds Trustguard asserted in its motion for summary judgment, and that the circuit court considered and rejected each of the opposing arguments offered by Sparks in her response to Trustguard's motion. *See, e.g., Sword v. Scott*, 293 Ky. 630, 169 S.W.2d 825, 827 (1943) ("In the absence of the court's specifying the ground or grounds for his dismissal of the petition, it will be assumed that it was upon any or all of the grounds which the proof sufficiently established."). Accordingly, we will presume that the circuit court found that the terms of King's insurance policy unambiguously excluded Sparks from coverage, and that the circuit

court rejected Sparks' arguments to the contrary.

Sparks does not contest that King's insurance policy unambiguously excluded her from coverage, and has conceded the issue. Consequently, our opinion will address whether any of the arguments that Sparks offered below were sufficient, for purposes of summary judgment, to create an issue of fact regarding her entitlement to UIM coverage under the terms of King's policy. From what we are able to discern from the record and her appellate brief, those arguments relate to what Sparks has named the *"de facto* insured" rule, along with issues of estoppel, reasonable expectations, illusory coverage, and public policy. We will address each of these arguments in turn.

## A. The *"de facto* insured" rule

In large part, Sparks bases this particular argument upon a direct quote and correct statement of the law from *Meridian Mutual Ins. Co. v. Siddons*, 451 S.W.2d 831, 833 (Ky.1970): "Provisions required by statute are treated as being a part of the policy the same as if expressly written therein." Sparks argues that this should be read in conjunction with Kentucky Revised Statute (KRS) 304.14–060, entitled "Insurable Interest, property," which provides:

(1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.

(2) "Insurable interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.

(3) When the name of a person intended to be insured is specified in the policy, such insurance can be applied only to his own proper interest. This section shall not apply to life, health or title insurance.

Sparks also cites *Estes v. Thurman*, 192 S.W.3d 429 (Ky.App.2005), which is a case she argues means that "a person owning insured property is entitled to the insurance proceeds, *even if the person is not a named insured under the policy.*"

Combined, Sparks argues that these authorities create what she has labeled the *"de facto* insured rule." When applied to the facts of this case, she asserts that this rule yields the following results: 1) Because KRS 304.14–060 requires that only individuals with an "insurable interest" in property covered under an insurance policy may benefit from the insurance policy and because only she had an insurable interest in the Camaro covered under King's policy, *Meridian*, 451 S.W.2d at 833, supports that her name should be "treated as part of the policy"; and 2) in any event, *Estes*, 192 S.W.3d 429, provides that because Sparks had an insurable interest in the Camaro, it was unnecessary for her name to be added to King's insurance policy as a precondition to having UIM coverage under that policy.

Sparks' theory and argument labor under several misapprehensions.

■ To begin, while *Meridian* certainly stands for the proposition that *"provisions* required by statute are treated as being a part of the policy the same as if expressly written therein," 451 S.W.2d at 833, *Meridian* does not stand for the proposition that *parties* are, too. To the contrary, Kentucky law requires a person to have an insurable interest in the insured property "both at the time of the making of the contract and at the time of the

loss[.]" *Crabb v. Calvert Fire Ins. Co.*, 255 S.W.2d 990, 991 (Ky.1953). And, an insurance contract "is void from its inception" if "an insurable interest does not exist at the time the contract for insurance was made[.]" 44 Am.Jur.2d Insurance § 933 (2011). Because King had no insurable interest in the Camaro when he made his contract of insurance with Trustguard, his policy was void to the extent that it was based upon any kind of insurable interest in the Camaro. Additionally, UIM coverage (which is what Sparks is seeking under King's policy) is personal to the insured—King—and is not connected to any particular vehicle. *Dupin v. Adkins*, 17 S.W.3d 538, 543 (Ky.App.2000). Consequently, Sparks cannot use her own insurable interest in the Camaro as a tool for imputing herself into King's policy.

The holding of *Estes*, 192 S.W.3d 429, does not change this result. There, by way of background, two parties each had a form of insurable interest (*i.e.*, the sellers of certain real property held "bare legal title," *Id.* at 432–33, while the buyers were considered "equitable owners," *Id.* at 433). The sellers purchased fire insurance covering the property and the purchasers did not. When the property was subsequently damaged by fire, the Court held that "a named insured under a policy is not entitled to recover more than the value of his or her insurable interest." *Id.* at 432 (citations omitted). The Court determined that the sellers were only entitled to keep the proceeds of the fire insurance policy that equaled their own insurable interest. For equitable reasons particular to real estate installment contracts, the Court further held that the sellers held the remainder of the proceeds in trust for the benefit of the buyers' insurable interest. *Id.* at 433.

*Estes* does indeed state that "it is not necessary that one be named as an insured

in an insurance policy in order to be entitled to policy proceeds." *Id.* at 432. But neither *Estes*, nor the cases it cites in support of that statement, stand for the proposition that any person or entity is capable of making a valid insurance contract without first having an insurable interest in the insured property. *See, e.g., Aetna Ins. Co. v. Solomon*, 511 S.W.2d 205, 208 (Ky.1974) (wife with insurable interest entered into fire insurance policy; husband with separate insurable interest, although not a party to the insurance policy, was considered a third-party beneficiary); *A.H. Thompson Co. v. Security Ins. Co.*, 252 Ky. 427, 67 S.W.2d 493, 496 (1934) (purchaser of equipment, with right of possession and interest in that equipment, purchased insurance thereon; seller of equipment, who had no knowledge of the insurance policy but reserved title to and lien upon said equipment, "had an equitable lien on the proceeds of the policy"); *Castle Ins. Co. v. Vanover*, 993 S.W.2d 509, 510 (Ky.App.1999) (Buyer of real property purchased fire insurance policy; seller, who became holder of second mortgage on the property, had an insurable interest in the property; buyers, by virtue of their agreement with the sellers, "had an obligation to insure that interest"; and, sellers were thus entitled to a share of the insurance proceeds).

In short, Sparks has cited no legal authority supporting that her ownership of the Camaro operated to impute her into the UIM coverage specified in King's insurance policy with Trustguard, and it does not serve as a basis for reversing the circuit court's summary judgment.

### B. Estoppel

■ Sparks offers two arguments that, when taken liberally, appear to be theories of estoppel. Generally speaking, "[t]he doctrine of equitable estoppel is applied to

transactions in which it would be unconscionable to permit a person to maintain a position which is inconsistent with one in which he has acquiesced." *Bruestle v. S & M Motors, Inc.,* 914 S.W.2d 353, 355 (Ky. App.1996) (citation omitted). In this vein, Sparks argues that when King represented in his application for insurance with Trustguard that he owned the Camaro, but also supplied Trustguard with the VIN of the Camaro, it triggered an affirmative duty on the part of Trustguard to determine the true identity of the individual with the insurable interest on the Camaro and to add that individual to King's policy or substitute that person instead of King. Alternatively, Sparks argues that Trustguard had an affirmative duty to add Sparks to King's insurance policy because one or more of the insurance premiums were paid with checks listing both Sparks' name and King's name in the upper-left-hand corner (because they related to a joint checking account that Sparks and King shared) and that Sparks hand-delivered some of those checks to Trustguard's agent, PCB. In either event, Sparks argues that Trustguard is consequently estopped from denying her coverage under King's policy.

■ As to her first argument, Sparks cites no authority supporting that an insurance company has an affirmative duty to doubt the representations of its applicants and unilaterally revise an applicant's insurance policy to either add or substitute someone else as a named insured. To the contrary, "the rule is that as between the applicant and the insurance company it is the applicant's responsibility to see that the application is correctly filled out." *State Farm Mut. Auto. Ins. Co. v. Crouch,* 706 S.W.2d 203, 206 (Ky.App.1986) (citation omitted); *see also Commonwealth Life Ins. Co. v. Goodknight's Adm'r,* 212 Ky. 763, 280 S.W. 123, 126 (1926) (refusing to sustain contention that insurer should

not be permitted to rely on false answer made by insured in application for life insurance). Here, irrespective of the fact that he supplied Trustguard with the Camaro's VIN, King represented in his application that he was the owner of the Camaro and the only person to be insured under the policy. Because Sparks points to no evidence demonstrating that Trustguard had "clear notice and full cognizance of the true facts," *Crouch,* 706 S.W.2d at 206, Trustguard was entitled to rely upon King's representations.

■ Sparks' second argument is also without merit for the same reasons; furthermore, she cites no authority supporting that she was entitled to unilaterally add herself to King's policy simply by paying some or all of his premiums, even if she did pay those premiums in person. In short, neither of Sparks' estoppel arguments provides any reason for reversing the circuit court's judgment.

## C. Reasonable Expectations

In *Simon v. Continental Insurance Co.,* 724 S.W.2d 210, 212–13 (Ky.1986), our Supreme Court discussed the doctrine of reasonable expectations:

> The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation.
>
> · · ·
>
> The doctrine of reasonable expectations is used in conjunction with the principle that ambiguities should be resolved against the drafter in order to circumvent the technical, legalistic and complex contract terms which limit benefits to the insured.

In this regard, Sparks' arguments are 1) when King applied for insurance, King "genuinely believed" that Trustguard would also insure Sparks; and 2) Trustguard never told Sparks that she was *not* covered under King's policy.

■ Placing these arguments against the backdrop of the doctrine of reasonable expectations is conceptually difficult: An insured is not contending that a complex contract term denied her coverage that she otherwise reasonably expected; rather, an uninsured—Sparks—is arguing that she has been unfairly denied coverage simply because her name was never on the policy. Nevertheless, Sparks' arguments are meritless even if taken at face value.

■ "Reasonable expectations" are not ascertained from the subjective belief, however genuine, of the insurance applicant. This Court has specified that the test in determining reasonable expectations is based on construing the policy language as a layman would understand it, rather than considering the policyholder's subjective thought process regarding his policy. *Estate of Swartz v. Metropolitan Property & Cas. Co.,* 949 S.W.2d 72, 75 (Ky.App.1997). Only actual ambiguities in the policy language will trigger the doctrine of reasonable expectations. *True v. Raines,* 99 S.W.3d 439, 443 (Ky.2003). Here, Sparks has identified no ambiguities in the Trustguard policy. She concedes that her own name was unambiguously left out of the policy. According to their depositions, Sparks and King both noticed that Sparks was not listed as an insured under King's policy prior to Sparks' accident. King and Sparks further testified that they never made any request to have Sparks added to King's policy because neither believed that she needed to be added to the policy for her to receive coverage. Neither Sparks nor King specifically testified about how they arrived at that belief, but

both testified that their belief did not come from anything that Trustguard represented to them. Under these circumstances, and having construed the policy language as a layman would understand it, we find that the doctrine of reasonable expectations cannot serve to impute Sparks' name into King's insurance policy.

Moreover, Sparks cites nothing indicating that Trustguard had any affirmative duty to inform her that she was omitted from King's policy. And, in any event, unambiguously omitting Sparks' name from King's policy—a policy with terms that specifically excluded her from its coverage—was clearly information enough to defeat any expectation that Sparks would receive coverage. *See Simon,* 724 S.W.2d at 212. In sum, the doctrine of reasonable expectations offers no basis for reversing the circuit court's judgment.

### D. Illusory Coverage

■ The doctrine of illusory coverage, like the doctrine of reasonable expectations, operates to qualify the general rule that courts will enforce an insurance contract as written. "This interpretation theory rests on the principle that the insurer's argument 'proves too much.' The language, if interpreted as proffered by the insurer, essentially denies the insured most if not all of a promised benefit." 4 Bruner & O'Connor Construction Law § 11:34 (footnote omitted); *see also* BLACK'S LAW DICTIONARY 497 (7th Ed.1999) (defining the "doctrine of illusory coverage" as "A rule requiring an insurance policy to be interpreted so that it is not merely a delusion to the insured"). A practical example of how this doctrine is applied appears in *Chaffin v. Kentucky Farm Bureau Ins. Companies,* 789 S.W.2d 754 (Ky.1990), where the Court refused to enforce a clearly written anti-stacking pro-

vision in an automobile insurance policy. In particular, the Court stated:

> On the one hand coverage is given and then taken away by a prohibition against combining the limits of two or more insured automobiles, and on the other, coverage is given and then taken away by means of another vehicle exclusion. In each instance the coverage bought, paid for and reasonably expected is illusory.

*Id.* at 757 (citing *Hamilton v. Allstate,* 789 S.W.2d 751 (Ky.1990)).

With that said, Sparks argues that because King's insurance policy with Trustguard does not provide her with UIM coverage, King's policy is therefore analogous to contracts with illusory terms discussed in *Philadelphia Indemnity Ins. Co. v. Morris,* 990 S.W.2d 621, 626 (Ky.1999), and *Hartford Acc. & Indem. Co. v. Huddleston,* 514 S.W.2d 676 (Ky.1974). She further argues that, as a consequence, she is entitled to impute herself into the coverage of King's policy.

In *Morris,* 990 S.W.2d at 626, it was held that UIM coverage in a corporate insurance policy which only purported to give coverage to the corporation was illusory if it did not also cover "proper persons" because a corporation can only act through people, *i.e.,* its employees and agents. *Huddleston,* 514 S.W.2d 676, although not expressly using the term "illusory," reached a similar result: it declined to regard a partnership as a legal entity, rather than as an association of people, in order to extend UIM coverage to the injured son of a partner; in particular, it held that "A legal entity has no 'spouse' nor 'relatives' nor 'household.' A legal entity could not sustain 'bodily injury.'" *Id.* at 678.

■ *Morris* and *Huddleston* do not treat the doctrine of illusory coverage any differently than *Chaffin;* in each case, "il-

lusory coverage" is still discussed in terms of coverage that is at least implicitly *given* under its provisions and then *taken away,* whether by virtue of a prohibition or exclusion contained in the same policy, or by virtue of a strict legal definition (*i.e.,* the definition of a "partnership" or "corporation"). Thus, in the words of one court, "the doctrine of illusory coverage is best applied ... where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Jostens, Inc. v. Northfield Ins. Co.,* 527 N.W.2d 116, 119 (Minn.App.1995).

■ Here, regardless of whether *King* would have ultimately been able to recover under all of the provisions of his insurance policy with Trustguard, his Trustguard policy contained nothing illusive regarding *Sparks.* To the contrary, at all times, Sparks was unequivocally omitted from King's policy; at no time and under no reading of King's insurance policy did Trustguard ever expressly or implicitly promise to give Sparks any kind of coverage or allocate premiums to that effect; and, nothing in the policy reflects that Trustguard otherwise gave Sparks or King any reasonable ground for believing that it would ever give Sparks coverage. Accordingly, this doctrine has no application to this case and, likewise, provides no basis for reversing the circuit court's judgment.

## E. Public Policy

■ Finally, Sparks argues that public policy favors imputing her into the coverage of King's policy with Trustguard; in support, she restates each of her previous arguments. Because we have already determined her previous arguments to be without merit, we will not readdress them and, thus, we need not address this point. Suffice it to say, however, that public poli-

cy recognizes that insurance carriers have the right to impose reasonable limitations on their coverage. *Jones v. Bituminous Cas. Corp.* 821 S.W.2d 798, 802 (Ky.1991). Public policy does not favor allowing a person who is otherwise clearly excluded from the terms of a UIM policy to impute herself into its coverage simply by paying one or more of its premiums, or by simply contending that she owned a particular vehicle. Public policy does not favor discouraging an insurer from relying upon the knowing and voluntary representations of an insurance applicant. And, while Sparks contends in her brief that she and King never read the Trustguard policy in the years preceding her accident—a statement which their respective depositions contradict—public policy also does not favor allowing Sparks or King to use their purported ignorance of the Trustguard policy terms to their advantage. *Grigsby,* 795 S.W.2d at 374.

### CONCLUSION

For these reasons, the Laurel Circuit Court's summary judgment in favor of Trustguard is AFFIRMED.

ALL CONCUR.