RENDERED:  SEPTEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-001061-MR

LYNNE E. JONES                                                         APPELLANT

v.                      APPEAL FROM WARREN CIRCUIT COURT
                        HONORABLE STEVE A. WILSON, JUDGE
                                 ACTION NO. 15-CI-01471

RICKEY SHIVE AND
RANDALL FARRIS                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, MAZE, AND TAYLOR, JUDGES.

MAZE, JUDGE:  Lynne E. Jones (Jones) appeals from a summary judgment by the

Warren Circuit Court dismissing her negligence claims against Rickey Shive

(Shive) and Randall Farris (Farris).  She alleges that there were genuine issues of

material fact concerning the duties owed by Shive and Farris and their entitlement

to qualified immunity.  Based on the undisputed evidence of record, we conclude

that Shive and Farris were entitled to qualified official immunity. Hence, we affirm the summary judgment.

For purposes of this appeal, the following facts are not in dispute. On December 12, 2014, Jones was present at Bowling Green Junior High School to pick up her daughter. While at the school, Jones went to the bathroom and entered the handicapped stall. When Jones entered the stall, she pulled the door towards her, away from the interior of the stall. The door freely opened outward. Jones entered, closed the door, and latched it while using the bathroom. After Jones had used the bathroom, she unlatched the door and attempted to exit the stall. Jones grabbed the top of the door and pulled it inwards towards her. While pulling the stall door inward, Jones began to walk through the opening to exit the door. The door would not open fully in this position, and Jones noticed tension in the door. Jones, while facing the door, let go of it and was struck in the head just above her right eye. Jones sustained serious injury from the impact of the door.

On December 11, 2015, Jones brought this action against Shive and Farris, employees of the Bowling Green Independent School District (the District), seeking recovery of damages for personal injuries sustained while on the premises of Bowling Green Junior High School.[1] Jones asserts that the stall door was

---

[1] Jones also named Scranton Products, Inc. as a defendant. Scranton Products was dismissed as a defendant, and the claims against it are not the subject of this appeal.

missing a "keeper bumper," which would have prevented the stall door from being opened in the wrong direction. Jones alleges that Shive and Farris each had duties to assure that the proper equipment was installed and to assure that the door to the bathroom stall that Jones used was in good working order.

Shive is the Facilities Director for the District. He reports directly to the District Superintendent, Gary Fields. Shive supervises the maintenance office manager, maintenance office secretary, assistant maintenance supervisor, maintenance technicians, and custodians. Shive stated that he assigns work to others and supervises said work. Farris is the Assistant Maintenance Supervisor for the District. He supervises the maintenance technicians and custodians of the District and reports directly to Shive. The parties agree that Shive and Farris were not employed by the District at the time the door was installed.

The District uses a web-based order system to report maintenance or repair issues. At each school, there is a designated individual who is authorized to place work orders once the need for maintenance or repair has been identified. Anyone who finds something in need of maintenance or repair can report it to the designated individual. The designated individual creates the order which is then received at Shive's office. Shive then assigns a maintenance technician to perform the needed repairs. Farris supervises the technicians and evaluates their work.

The parties agree that no work order, request, or issue with the stall door had been reported within the work-order system. Shive and Farris testified in their depositions that they had not inspected the stall doors prior to Jones's injury. Each also testified that, to the best of their knowledge and belief, the stall door was in the same condition as when it was first installed in Bowling Green Junior High School.

Following a period of discovery, Shive and Farris filed a motion for summary judgment, asserting that they owed no duty to Jones to inspect the school buildings to discover needed maintenance or repair. In the alternative, they argued that they were entitled to qualified official immunity when sued in their individual capacities. On June 18, 2019, the trial court granted the motion for summary judgment without specifying the basis for dismissal. This appeal follows.

Jones asserts that the trial court erred in granting Shive's and Farris' motion for summary judgment. On appellate review of a trial court's grant of summary judgment, "we operate under a de novo standard of review with no need to defer to the trial court's decision." *Louisville & Jefferson Cty. Metro. Sewer Dist. v. T+C Contracting, Inc.*, 570 S.W.3d 551, 556 (Ky. 2018) (citation omitted). "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists." *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (citation

omitted).  If there are no genuine issues as to any material fact, summary judgment is appropriate.  *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).  "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor."  *Id.* (citing *Dossett v. New York Min. & Mfg. Co.*, 451 S.W.2d 843 (Ky. 1970)).  The party opposing summary judgment must present "at least some affirmative evidence showing that there is a genuine issue of material fact[.]"  *Id.* at 482 (citations omitted).

As noted, the trial court did not explain its grounds for granting summary judgment in this case.  In the absence of any specificity, we will presume that the trial court's order is based upon the grounds asserted in Shive's and Farris's motion for summary judgment.  *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 124 (Ky. App. 2012) (citing *Sword v. Scott*, 293 Ky. 630, 169 S.W.2d 825, 827 (1943)).  Furthermore, it is "the rule in this jurisdiction that the judgment of a lower court can be *affirmed* for any reason in the record."  *Fischer v. Fischer*, 348 S.W.3d 582, 591 (Ky. 2011), *abrogated on other grounds by Nami Res. Co., L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323 (Ky. 2018) (citation omitted).  That is to say, "[i]f an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds."  *Mark D. Dean,*

*P.S.C. v. Commonwealth Bank & Tr. Co*., 434 S.W.3d 489, 496 (Ky. 2014) (citation omitted).

The primary issue presented is whether Shive and Farris are entitled to qualified official immunity. Public officials and employees are entitled to immunity from tort liability arising out of the negligent performance of their discretionary duties. *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001). Qualified official immunity is not just a defense to liability, "but also from suit itself." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010) (citation omitted). Further, "[i]t rests not on the status or title of the officer or employee, but on the function performed." *Yanero*, 65 S.W.3d at 521 (citation omitted). The Kentucky Supreme Court has defined when such immunity applies as:

> Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, (2) in good faith; and (3) within the scope of the employee's authority.

*Id.* at 522 (citations omitted).

Jones does not allege that either Shive or Farris were acting in bad faith. Likewise, she concedes that both men were acting within the scope of their official duties. The sole question of law concerns whether the act or omission in question involved a ministerial or discretionary duty.

-6-

Negligent performance of a ministerial act affords no immunity. *Id.* The *Yanero* Court defined a ministerial act as "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (citation omitted). Furthermore, ministerial acts are ones that an employee is required to undertake "without regard to his or her own judgment or opinion concerning the propriety of the act to be performed." *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014) (quoting 63C AM. JUR. 2D *Public Officers and Employees* § 318).

In *Haney*, the Kentucky Supreme Court recognized that "few acts are ever purely discretionary or purely ministerial"; therefore, the analysis shifts to the "*dominant* nature of the act." *Haney*, 311 S.W.3d at 240. If the dominant nature of the act is discretionary, qualified immunity applies. Discretionary acts are those "involving quasi-judicial or policy-making decisions" involving "the exercise of discretion and judgment, or personal deliberation, decision, and judgment[.]" *Marson*, 438 S.W.3d at 297; *Yanero*, 65 S.W.3d at 522 (citation omitted). However, discretion by the employee or official carrying out the act in choosing the "means or method" to complete the task does not change the dominant nature of the ministerial act. *Yanero*, 65 S.W.3d at 522 (quoting *Upchurch v. Clinton Cty.*, 330 S.W.2d 428, 430 (Ky. 1959)). Thus, to determine whether qualified

immunity applies, it is necessary to examine "the nature of the functions with which a particular official or class of officials has been lawfully entrusted[.]" *Id.* at 518 (citation omitted). "What is required by the job assigned to the governmental employee defines the nature of the acts the employee performs." *Marson*, 438 S.W.3d at 299-300.

In this case, Shive and Farris are each in supervisory positions. Their affidavits, depositions, and job descriptions make it clear that they supervise and manage the maintenance technicians that perform needed repairs. Each of their job descriptions contains the following language:

> Assist in recommendations related to staffing levels and purchase of equipment and supplies; review and revise work methods and procedures to assure efficiency, cost-effectiveness and compliance with established policies, regulations and standards of the district . . . provide daily guidance and direction regarding employee workload, job assignments and priorities. Travel to District sites to evaluate work to be performed and to inspect completed work.

Shive's job description further provides that he "develops, interprets and implements policies and procedures"; "[a]nalyze[s] project plans and maintenance needs, determine, schedule and coordinate work to be performed by outside firms"; and "[c]onsult[s] and advise[s] in regard to alteration of existing structures." Farris's job description continues that he "[p]rovide[s] supervisory assistance to the maintenance department, including job assignments, performed

work evaluation and technical advisement"; "[a]ssist[s] in securing contract work, project planning, evaluation and execution"; and "[p]rovide[s] hands-on technical support and advisement to the maintenance staff."

Neither Shive's nor Farris's listed job duties require them to inspect schools to determine whether maintenance or repairs are required. Likewise, their duties do not require them to inspect school buildings to determine whether pre-existing hardware was properly installed or designed. Rather, their duties with respect to the maintenance and repair of school facilities are purely supervisory.

Examining "the nature of the functions with which a particular official or class of officials has been lawfully entrusted" with regard to Shive and Farris reveals that their functions are almost entirely discretionary. *Yanero*, 65 S.W.3d at 518. Shive's and Farris's functions and duties are analogous to those of the principal in *Marson*. Shive and Farris each "direct various school employees in their job performance by assigning job duties and [] generally supervise them." *Marson*, 438 S.W.3d at 299. As in *Marson*, Shive and Farris make "higher-level decisions and giv[e] orders to effectuate those decisions" rather than "simply following orders." *Id.* at 297. Shive and Farris each exercise discretion, judgment, and "personal deliberation" in carrying out their duties. *Yanero*, 65 S.W.3d at 522.

Jones points to Farris's admission to having performed manual labor while employed as the assistant maintenance supervisor. However, this single

-9-

prior instance does not change the "*dominant* nature of the act." *Haney*, 311 S.W.3d at 240. Furthermore, Farris's current duties do not require him to perform manual labor. And as noted, neither Shive nor Farris has a duty to inspect school facilities for needed repair. They have only a general duty to keep the facilities in good working order, and any action or omission on their part was made while carrying out that discretionary duty.

Jones further argues that the facts of this case are analogous to those in *Faulkner v. Greenwald*, 358 S.W.3d 1 (Ky. App. 2011). In *Faulkner*, the responsibilities of a high school athletic director included the safety and maintenance of the athletic facilities, including a concession stand located adjacent to the school's soccer field. When a volunteer in the concession stand was injured by a falling overhead door, the athletic director argued that his duties were primarily discretionary in nature. This Court disagreed, concluding that the director's duties with respect to maintenance of the concession stand were ministerial. *Id.* at 4. Jones argues that Shive's and Farris's duties to maintain and repair the school facilities were also ministerial in nature.

We disagree. The athletic director in *Faulkner* did not have any supervisory duties over the concession stand. Rather, he was directly responsible for its maintenance and safety. This case is more analogous to *Marson*, in which the Court found that a school principal had a duty to "provide a safe school

-10-

environment," but that duty was "general rather than a specific duty[.]" *Marson*, 438 S.W.3d at 299. The principal in *Marson* only had a "duty to reasonably determine if the custodians were doing their jobs." *Id.* The Court reasoned that the principal assigned specific tasks to employees, devised general school procedures, and provided general supervision of those employees; therefore, the duty was general in its broadness. *Id.*

The same duty can be applied to the case at hand. Shive and Farris are each in supervisory or managerial roles. They each assign employees with tasks, provide general supervision, and review and revise work methods and procedures. Shive and Farris had a general duty to ensure the facilities were in good working order. This duty is managerial as they must only "reasonably determine" if the maintenance technicians and other employees are doing their jobs. *Id.* As in *Marson*, Shive and Farris are not "insurers" of students or visitor's safety. *Id.*

We agree that Shive and Farris have a duty to ensure the facilities are maintained and repaired in working order. This duty may also require them to report or repair conditions which come to their immediate attention. However, this duty is general rather than specific and does not extend to requiring either of them to inspect the facilities to identify needed repair or maintenance. Consequently, Shive's and Farris's actions in fulfilling this duty are discretionary in that they

-11-

supervise others, affect policy, and make higher-level decisions. Because Jones and Farris were acting in good faith and within the scope of their discretionary authority, they were entitled to the protection of qualified official immunity. Therefore, the trial court properly granted summary judgment on this ground.

Accordingly, we affirm the summary judgment granted by the Warren Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Brian Schuette
Amanda L. Blakeman
Bowling Green, Kentucky

BRIEF FOR APPELLEES:

Regina A. Jackson
David W. Anderson
Bowling Green, Kentucky